**UNITED STATES of America**

v.

**Eddie JONES, Appellant.**

No. 92–3190.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
on Oct. 23, 1992.

Decided Nov. 5, 1992.

Sally A. Frick, Pittsburgh, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Bonnie R. Schlueter, Asst. U.S. Atty., Paul J. Brysh, Office of U.S. Atty., Pittsburgh, Pa., for U.S.

Before: COWEN, NYGAARD and SEITZ, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Eddie Jones pleaded guilty pursuant to a plea agreement for distributing in excess of 50 grams of a mixture containing cocaine base in violation of 21 U.S.C. § 841(a)(1). On the day before he was to be sentenced he filed a motion to withdraw his guilty plea. The court denied it and sentenced him. Jones raises two issues on appeal. First, he contends that the court erred by denying his motion to withdraw his guilty plea. Second, he contends that the sentencing enhancement for distributing cocaine base, Sentencing Guidelines § 2D1.1(c)(6), is constitutionally vague in that it fails to differentiate cocaine base from cocaine. We will affirm.

### I.

■ Jones' first contention is that the district court abused its discretion by denying his motion to withdraw his guilty plea. This issue requires little discussion and we conclude the court did not err. Fed. R.Crim.P. 32(d) provides that "[i]f a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon showing by the defendant of any fair and just reason." We have held that three factors must be considered when a district court evaluates a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by his withdrawal; and (3) the strength of the defendant's reasons to withdraw the plea. *United States v. Huff*, 873 F.2d 709, 712 (3d Cir.1989).

Jones contended in his petition to withdraw his guilty plea that he owed another a substantial sum of money and that he was "set up," or that "I knew if I wouldn't do this deal or have his money he would have someone get me." But the district court denied the motion upon the finding that the reason why Jones sought to withdraw the plea was his "fear of substantial sentence," and that the reasons proffered by Jones were merely a "post hoc" attempt to justify his motion. Jones offers no persuasive

argument that this is clearly erroneous. Indeed, at the hearing conducted to change his plea to "guilty," Jones acknowledged that he did all that the government said they were prepared to prove. At no time did Jones mention coercion or that he was forced in any manner to sell these drugs. We conclude there is no clear error in the court's finding.

■ The district court retains a great deal of discretion to deny a withdrawal motion. A simple shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to force the government to incur the expense, difficulty and risk of trying a defendant, who has already acknowledged his guilt before the court.

■ We do not take lightly the right which every defendant possesses to have the protective cloak of innocence removed by trial. Nonetheless, the situation is different when the cloak has been shed voluntarily and knowingly before the court. The defendant must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial. Jones has clearly not met his burden. We conclude that the decision of the court was a proper exercise of its discretion.

### II.

■ Jones next contends that the significantly higher offense levels for cocaine base violate his Fifth Amendment rights because the guidelines are fatally vague as to what constitutes cocaine base. Jones was convicted of selling a form of cocaine base known by its street name "crack." Jones' offense level was calculated to be 32 because he possessed 99.1 grams of cocaine base as opposed to cocaine salt. The sentencing guideline at issue here is predicated upon 21 U.S.C. § 841(b), which equates five kilograms of cocaine with fifty grams of cocaine base for purposes of sentencing. *See* 21 U.S.C. § 841(b)(1)(A)(ii) and (iii). Following the pattern of these sections, the

Sentencing Commission likewise provided for 100:1 ratio between cocaine base and cocaine salt in its drug equivalency tables. *See* U.S.S.G. § 2D1.1(c)(6).

Jones contends that the Sentencing Guidelines are unconstitutionally vague because the term "cocaine base" is not defined. He contends that Congress' decision to distinguish between cocaine and cocaine base is arbitrary and irrational and thus violates equal protection. He further contends that the distinction cannot be justified, since there is no difference between cocaine salt and cocaine base, or "crack." He urges that we conclude that since there is no rational basis for the distinction in the law it must fall on equal protection grounds. Finally, he argues that the void for vagueness doctrine requires that penal statutes sufficiently define the criminal offense so that ordinary people such as he can understand what conduct is prohibited and to prevent arbitrary and discriminatory enforcement.

■ We believe the statute is valid and valid as applied to Jones. Congress need not explicitly state its reasons for passing legislation so long as the courts can find its rational purpose. *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Here, the purposes are readily apparent. Crack was the prime target of the Narcotics Penalties and Enforcement Act. *See United States v. Brown,* 859 F.2d 974, 976 (DC Cir.1988); *United States v. Collado–Gomez,* 834 F.2d 280, 280–81 (2d Cir. 1987), *cert. denied* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). It is far more addictive than cocaine in its salt form, and is more accessible due to its relatively low cost. It is a different drug from cocaine in the salt form, because it is prepared for inhalation and is absorbed by the body through the lungs. It concentrates and magnifies the effects on the body to such a degree that it can be cheaply manufactured, sold at a relatively low cost, and for an exorbitant profit to the dealer. We have no doubt that Congress intended that

section 841(b)(1)(A)(iii) include "crack" as a cocaine base. *See United States v. Wheeler,* 972 F.2d 927, 930 (8th Cir.1992).

Moreover, simply because Congress has not provided its definition for the term cocaine base, it does not follow that it has thereby failed to establish minimal guidelines to govern law enforcement. Cocaine base or "crack" and cocaine salt are different substances and each has a different molecular structure and definition in organic chemistry. "Crack" or cocaine base is identical in molecular structure to cocaine as it appears naturally in alkaloid form in the plant, $C_{17}H_{21}NO_4$. It has a molecular weight of 303.35. In this form it is oil soluble, and is absorbed faster and more efficiently in the mucus membranes.

"Cocaine" in its familiar white, powdery form is not the natural or base cocaine. Cocaine salt, as it is correctly denominated, is cocaine base or natural cocaine which has been converted from its alkaloid structure to a salt by adding hydrochloric acid. Its molecular structure is $C_{17}H_{21}NO_4HCl$, and has a heavier molecular weight than cocaine base.[1] It is water soluble and is usually "snorted" or sniffed up the nose, and absorbed by the nasal passages. There is simply no force to the argument that "crack" or cocaine base is no different from "cocaine," and as a consequence Congress' decision is irrational. Crack is chemically different from cocaine salt. It is used differently than cocaine salt. Its effect upon the human body is different from that of cocaine salt. Congress responded by treating it differently in the law. *United States v. Jackson,* 968 F.2d 158, 162 (2d Cir.1992).

Jones correctly argues that the void for vagueness doctrine requires that penal statutes sufficiently define the criminal offense so that ordinary people such as he can understand what conduct is prohibited and also to prevent arbitrary and discriminatory enforcement. But Jones must also show vagueness in light of the facts of *his* case. *United States v. Powell,* 423 U.S. 87,

---

**1.** *Narcotic and Other Substances Subject to the Controlled Substance Act of 1970,* a publication of the Drug Enforcement Administration of the Department of Justice, January 1974, a monograph by John T. Maher.

92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975); *United States v. Woods*, 915 F.2d 854, 863 (3d Cir.1990). "It is well-established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). Here, there is absolutely no testimony, nor any proffer from Jones that he in any way misunderstood the differences between "crack" and "cocaine." He simply has no basis upon which to contend that the Sentencing Guidelines are vague as to him. *See United States v. Turner*, 928 F.2d 956, 966 (10th Cir.1991).

### III.

We hold that "crack" is a "cocaine base" and that it is a chemical compound created from alkaloid cocaine, with a definable molecular structure different from cocaine salt. Since the Sentencing Guidelines have a reasonable basis to differentiate between cocaine base and cocaine salt, and in addition are not vague under common usage definitions, we hold that neither 21 U.S.C. § 841(b)(1)(A)(iii) nor the Sentencing Guidelines § 2D1.1(c)(6) is void for vagueness. We will affirm.