**UNITED STATES OF AMERICA, Plaintiff**
**v.**
**THEODORE WESLEY SHELTON, Defendant**

No. 95-266

District Court of the Virgin Islands

Div. of St. Thomas and St. John

August 19, 1997

STANLEY DeJONGH, ESQ., (Office of the United States Attorney), *for Plaintiff*

STEPHEN BRUSCH, ESQ., (Office of the Federal Public Defender), *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court on the motion of defendant Theodore Wesley Shelton for departure from mandatory minimum sentence. Defendant claims that the 100-to-1 cocaine to cocaine base ratio delineated by Congress is unconstitutional, and that the rule of lenity and due process require that he be sentenced under the less severe penalties ascribed to cocaine salts. The Court finds the ratio established by Congress to be constitutional, and that the rule of lenity is inapplicable to defendant's case. Accordingly, defendant's motion will be denied.

## I. Procedural History

### A. *Facts*

On November 26, 1995, Shelton presented himself for inspection to U.S. Customs in order to board a Delta Airlines flight to Atlanta, Georgia. The inspector took note that defendant had paid for the airline ticket in cash that same day. During a routine search of defendant's luggage, three shampoo bottles were discovered as well as several tampon-like objects, all of which were field tested and proved positive for cocaine. Shelton also carried a box of

liquor, which contained two bottles with broken seals in which a solid rock-like substance was found.

Laboratory testing revealed that the shampoo bottles contained a total of 100.2 grams of cocaine hydrochloride and the liquor bottles held a total of 724.6 grams of cocaine base. The defendant ultimately plead guilty to one count of possession of cocaine base with the intent to distribute.

### B. The Historic Dispute

The UNITED STATES FEDERAL SENTENCING GUIDELINES ["GUIDELINES"] impose more severe penalties for offenses involving the "crack" form of cocaine base than for offenses involving cocaine. U.S.S.G. § 2D1.1(c). A body of judicial literature deplores that distinction. *See, e.g., United States v. Anderson*, 82 F.3d 436, 445-450 (D.C. Cir.1996) (Wald, J., dissenting) (criticizing higher penalties for crack); *United States v. Then*, 56 F.3d 464, 466-69 (2d Cir. 1995) (Calabresi, J., concurring) (same); *United States v. Dumas*, 64 F.3d 1427, 1432 (9th Cir. 1995) (Boochever, J., concurring) (calling higher penalties "unjustified" and "arbitrary"), *cert. denied*, 116 S.Ct. 1341 (1996); *United States v. Willis*, 967 F.2d 1220, 1226-27 (8th Cir. 1992) (Heaney and Lay, JJ., concurring) (asserting higher penalties have detrimental effect on minorities). Yet every challenge to the sentencing provisions that enforce the "100-to-1" penalty ratio ultimately has been rejected. *See, e.g., Anderson*, 82 F.3d at 440-41 (subsequent report by Sentencing Commission to Congress gave district court no power to depart); *Then*, 56 F.3d at 466 (rejecting equal protection claim); *United States v. Moore*, 54 F.3d 92, 96-99 (2d Cir. 1995) (same), *cert. denied*, 116 S.Ct. 793 (1996); *United States v. Stevens*, 19 F.3d 93, 97 (2d Cir.1994) ("[W]e join six other circuits that have similarly held that the Guidelines' 100 to 1 ratio . . . does not violate equal protection principles."); *Willis*, 967 F.2d at 1225 (rejecting equal protection claim).

The Court of Appeals for the Third Circuit explicitly found the 100-to-1 penalty ratio to be constitutional. *United States v. Jones*, 979 F.2d 317 (3d Cir. 1992). Since that analysis is largely applicable here, the Court will quote heavily from the *Jones* opinion:

Jones contends that the SENTENCING GUIDELINES are unconstitutionally vague because the term "cocaine base" is not defined. He contends that Congress' decision to distinguish

between cocaine and cocaine base is arbitrary and irrational and thus violates equal protection. He further contends that the distinction cannot be justified, since there is no difference between cocaine salt and cocaine base, or "crack." He urges that we conclude that since there is no rational basis for the distinction in the law it must fall on equal protection grounds. Finally, he argues that the void for vagueness doctrine requires that penal statutes sufficiently define the criminal offense so that ordinary people such as he can understand what conduct is prohibited and to prevent arbitrary and discriminatory enforcement.

We believe the statute is valid and valid as applied to Jones. Congress need not explicitly state its reasons for passing legislation so long as the courts can find its rational purpose. *New Orleans v. Dukes*, 427 U.S. 297 (1976). Here, the purposes are readily apparent. Crack was the prime target of the Narcotics Penalties and Enforcement Act. *See United States v. Brown*, 859 F.2d 974, 976 (D.C. Cir. 1988); *United States v. Collado-Gomez*, 834 F.2d 280, 280-81 (2d Cir. 1987), *cert. denied*, 485 U.S. 969 (1988). It is far more addictive than cocaine in its salt form, and is more accessible due to its relatively low cost. It is a different drug from cocaine in the salt form, because it is prepared for inhalation and is absorbed by the body through the lungs. It concentrates and magnifies the effects on the body to such a degree that it can be cheaply manufactured, sold at a relatively low cost, and for an exorbitant profit to the dealer. We have no doubt that Congress intended that section 841(b)(1)(A)(iii) include "crack" as a cocaine base. *See United States v. Wheeler*, 972 F.2d 927, 930 (8th Cir. 1992).

Moreover, simply because Congress has not provided its definition for the term cocaine base, it does not follow that it has thereby failed to establish minimal guidelines to govern law enforcement. Cocaine base or "crack" and cocaine salt are different substances and each has a different molecular structure and definition in organic chemistry. "Crack" or cocaine base is identical in molecular structure to cocaine as it appears naturally in alkaloid form in the

plant, $C_{17} H_{21} NO_4$. It has a molecular weight of 303.35. In this form it is oil soluble, and is absorbed faster and more efficiently in the mucus membranes.

"Cocaine" in its familiar white, powdery form is not the natural or base cocaine. Cocaine salt, as it is correctly denominated, is cocaine base or natural cocaine which has been converted from its alkaloid structure to a salt by adding hydrochloric acid. Its molecular structure is $C_{17} H_{21} NO_4 HCl$, and has a heavier molecular weight than cocaine base. It is water soluble and is usually "snorted" or sniffed up the nose, and absorbed by the nasal passages. There is simply no force to the argument that "crack" or cocaine base is no different from "cocaine," and as a consequence Congress' decision is irrational. Crack is chemically different from cocaine salt. It is used differently than cocaine salt. Its effect upon the human body is different from that of cocaine salt. Congress responded by treating it differently in the law. Jones correctly argues that the void for vagueness doctrine requires that penal statutes sufficiently define the criminal offense so that ordinary people such as he can understand what conduct is prohibited and also to prevent arbitrary and discriminatory enforcement. But Jones must also show vagueness in light of the facts of his case. "It is well-established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." Here, there is absolutely no testimony, nor any proffer from Jones that he in any way misunderstood the differences between "crack" and "cocaine." He simply has no basis upon which to contend that the SENTENCING GUIDELINES are vague as to him.

*Id* at 318-20 (footnotes and citations omitted). It would appear at first glance that *Jones* must foreclose any relief for Shelton, absent an opinion from the United States Supreme Court effectively overruling the holding in *Jones.*

## II. Discussion

### A. Defendant's Contentions

The crux of Shelton's argument is that cocaine and cocaine base are synonymous terms, and therefore indistinguishable as those

260

terms are used in the penalty provisions of 21 U.S.C. § 841. Moreover, he claims that as a matter of scientific fact, cocaine salt (the scientific term for cocaine powder, commonly referred to as "cocaine") is identical in structure, effect and function to cocaine base (often used synonymously with the term "crack"), and therefore sets out a scientifically meaningless distinction. According to defendant, the Congress's use of synonymous terms in making a scientifically invalid distinction render the 100-to-1 ratio between cocaine salt and cocaine base unconstitutional, and the rule of lenity ,requires that the lesser sentence for cocaine salt be imposed.

It is apparent that the defendant is aware of the case law in this area for his contentions differ slightly from those considered and rejected by the court in *Jones*. First, Shelton contends that, although cocaine base and crack may be distinguishable, they have essentially similar effects on the body and just as important, they are almost always found together. Shelton argues, therefore, that in these situations, the government has virtually unfettered discretion to choose whether to charge a defendant with possession of a substance containing a detectable amount of cocaine base, or possession of a substance containing a detectable amount of cocaine. Second, in an attempt to avoid the result of *Jones*, defendant contends that he did not or could not learn or understand the distinction between cocaine base and cocaine.

## B. The Relationship Between Cocaine Base and Cocaine Salts

On April 10, 1997, a hearing was held in which James Woodford, Ph.D ["Woodford"], testified on Mr. Shelton's behalf about the relationship between cocaine base (of which crack is one type) and cocaine salt (often referred to as cocaine powder or cocaine). Woodford's testimony had two main components: (1) the chemical makeup of cocaine base and cocaine salt are virtually identical and they have identical effects on the human body, and (2) detectable amounts of cocaine base and cocaine salt are nearly always found together in the same specimen. According to Dr. Woodford, and as adopted by the defendant, these two facts make the sentencing scheme adopted by Congress scientifically flawed. Shelton appears to contend that since the scheme is scientifically flawed, it is

261

unconstitutional. Each of Woodford's conclusions will be examined in turn.

1. Identical Structure and Identical Effects

This argument proposed by Woodford and the defendant has already been considered and rejected by the Court of Appeals in *Jones*. Although Dr. Woodford may not recognize it as being so, it is the province of the courts to determine whether a sentencing scheme is invalid. Woodford testified that the distinctions between crack and cocaine powder, such as method of use, elapse of time between ingestion and effect, price, and other considerations were immaterial in distinguishing between crack and cocaine powder. While Dr. Woodford is entitled to his opinion, it is not his opinion but the opinion expressed by the Court of Appeals in *Jones* which binds this Court.

■ The courts are not charged with deciding whether laws passed by Congress were drafted with the wisdom of Solomon, the precision of Leonardo da Vinci, or the artistic flair of Michaelangelo. Rather, the courts examine the laws as written, interpret them, and determine whether the laws comport with constitutional standards. Whether the court agrees with the purpose or effect of the law, or whether the court would have written the law had it been in Congress' place is irrelevant as long as that law is permissible under the Constitution. Mr. Shelton has failed to present any evidence to show that this Court is not bound by the decision rendered in *United States v. Jones*.

2. Presence of Both Cocaine Base and Cocaine Salt

In an apparent attempt to avoid the literal holding of *Jones*, Mr. Shelton presented the testimony of Dr. Woodford that cocaine base and cocaine salt are nearly always found together in detectable amounts. Put in a different way, a substance containing a detectable amount of cocaine base will nearly always contain a detectable amount of cocaine salt, and a substance containing a detectable amount of cocaine salt will nearly always contain a detectable amount of cocaine base. This relationship results from the operation of the chemical process in which cocaine base is made from cocaine salt, or vice versa. According to Dr. Woodford, most illegal

drug labs are incapable of the precise chemical manipulations needed to transform an entire amount of cocaine base into salt or vice versa. There is almost always some residue salt with the base left over from the chemical reaction.

■ Extrapolating from this relationship, Mr. Shelton and Dr. Woodford contend that the forensic laboratory technicians have virtually unfettered discretion to decide whether an individual will be charged with an offense involving cocaine base or cocaine salt. Since the statutes only require "a detectable amount" of these substances, Woodford asserts that the technician can report whatever finding he or the government chooses, since base and salt are commonly found together. However, neither Dr. Woodford nor the defendant has produced a suggestion of evidence that any technician ever made such an improper report. Even if the possibility exists that a technician can choose to report one way or another, it is not sufficient ground to declare the 100-to-1 ratio unconstitutional.

The Court is not persuaded by Woodford's testimony in this case. Shelton was apprehended while carrying 724 grams of base and 100 grams of salt. His possession of 100 grams of cocaine salt cannot somehow lessen the criminal penalty Congress has set for possessing such a large quantity of base.[1]

Defendant asserts that the rule of lenity should apply in his case, since Congress has impermissibly prescribed two penalties for the same offense, i.e. he is subject to penalties for his offense regarding a substance containing a detectable amount of cocaine salt and regarding that same substance which contained a detectable amount of cocaine base. *See United States v. Davis*, 864 F. Supp. 1303 (N.D. Ga. 1994). The rule of lenity "requires the sentencing Court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply." *United States v. Canales*, 91 F.3d 363 (2d Cir. 1996).

■ There is no such ambiguity in this case. Defendant was carrying substances which contained much more than detectable amounts of cocaine base and cocaine salt. The government therefore had the prosecutorial discretion to pursue penalties for either

---

[1] Dr. Woodford's point would be slightly more relevant in a case in which an individual possessed a large quantity of salt with only a tiny amount of base. This case does not present such troublesome facts.

cocaine base or cocaine salt, or both. In fact, defendant was charged with one count of possession of cocaine salt with intent to distribute and one count of possession of cocaine base with intent to distribute. As part of a plea agreement, defendant plead guilty to one count of possession of cocaine base with intent to distribute, while the cocaine salt count was dropped. Defendant cites no legal precedent for the application of the rule of lenity where there is no ambiguity that he possessed both substances in substantial quantities.[2]

## C. Vagueness and Knowledge

The defendant also attempts to argue that he does not understand the difference between cocaine base and cocaine salt. This argument is obviously raised in an attempt to avoid that portion of *Jones* in which the court states "there is absolutely no testimony, nor any proffer from Jones that he in any way misunderstood the differences between 'crack' and 'cocaine.'" *Id*. at 320. The fact that Shelton makes this argument does not create any doubt in the Court's mind that this motion by defendant should be dismissed.

In *Jones*, the Court of Appeals stated that vagueness challenges must be examined in light of the facts of the case at hand. The facts of Shelton's case are clear and sufficient to establish that the statute makes clear that the possession of cocaine, in whatever form, is unlawful. The only possible issue is whether the statute clarifies the difference between cocaine base and cocaine salt.

First, it is well-settled law that a defendant need not know the precise controlled substance possessed, as long as he knows that the substance is a controlled one. *See, e.g., United States v. Aguliar*, 994 F.2d 609, 619 (9th Cir. 1993); *United States v. Cheung*, 836 F.2d 729, 731 (1st Cir. 1988); *United States v. Rada-Solano*, 625 F.2d 577,

---

[2] The Court does not imply that a defendant with a large amount of salt and a minute but detectable amount of base would fare any better. Dr. Woodford did not testify that it was impossible for a laboratory to convert an entire quantity of cocaine base to salt, only that it was difficult. Extrapolating from this fact, it must also be true that a confiscated substance may be found which contains only cocaine base or only cocaine salt. While both base and salt may be present in a large number of cases, they are not necessarily found together in all cases. Second, under the law written by Congress, the 100-to-1 penalty is appropriate so long as there is a detectable amount of base. Casting the question in this form, however, does help make clear that it is governed and rejected by *United States v. Jones*, 979 F.2d 317 (3d Cir. 1992).

580 (5th Cir. 1980); *United States v. Morales*, 577 F.2d 769, 776 (2d Cir. 1978). Moreover, the Third Circuit Court of Appeals has concluded that crack or cocaine base has a clearly discernible meaning in the drug community. *See, e.g., United States v. Canales*, 91 F.3d 363 (2d Cir. 1996); *United States v. James*, 78 F.3d 851 (3d Cir. 1996); *United States v. Alton*, 60 F.3d 1065 (3d Cir. 1995); *United States v. Avant*, 907 F.2d 623 (6th Cir. 1990); *Plyes v. United States*, 1997 WL 241109 (E.D. Pa. 1997); *Ramirez v. United States*, 963 F. Supp. 329 (S.D.N.Y. 1997).

█ Aside from the well-established a proposition of law that ignorance of the law is no excuse, this defendant has no basis to argue that he did not know he possessed a controlled substance. Instead, he tries to argue that he does not understand the distinction between crack and and cocaine salt. The case law establishes (1) that a defendant need not be aware of the precise nature of the substance he possesses and (2) that the statute and sentencing guidelines properly use terms which are understood by ordinary and reasonable people, to say nothing of people in the drug community. For these reasons, the defendant's contention that he does not and cannot understand the distinction between crack and cocaine salt has no merit.

### III. Conclusion

The precedent in this circuit of *United States v. Jones* largely dictates that Mr. Shelton's motion must be denied. His efforts to differentiate his case from *Jones* are akin to an octopus' use of its inkbag: an attempt to obfuscate and thereby escape in a cloud of a defense with no real substance. As no new substantive issues are raised in defendant's motion, binding precedent requires that this motion be denied.

ENTERED this 19th day of August, 1997.

### ORDER

For the reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that defendant's motion to declare the 100-to-1 ratio of cocaine salt to cocaine base unconstitutional is DENIED.

ENTERED this 19th day of August, 1997.