**UNITED STATES of AMERICA and GOVERNMENT of the VIRGIN ISLANDS, Plaintiffs,**

**v.**

**REGINALD SYLVESTER BYERS, JR. and CASWELL FREDERICKS, aka "PERCY SMITH," "AFRICA" & "JUNIE NICHOLS," Defendants.**

Crim. No. 1992-52

District Court of the Virgin Islands

Div. of St. Thomas and St. John

July 6, 1998

SARAH L. WEYLER, ESQ., (Ass't United States Attorney), *for Plaintiffs*

KATHLEEN MACKAY, ESQ., (Hodge and Francois), St. Thomas, U.S.V.I., *for Reginald Byers, Jr., Defendant*

THURSTON McKELVIN, ESQ., (Federal Public Defender), *for Caswell Fredericks, Defendant*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court upon motion of Reginald Byers, Jr. ["Byers" or "defendant"] to withdraw his plea of guilty and upon motion of Ms. Mackay to withdraw from representation, the defendant having asserted her misfeasance or malfeasance as grounds for his motion.

This Court has general criminal jurisdiction equivalent with that of a district court of the United States under Revised Organic Act of 1954 § 22, 48 U.S.C. § 1612.[1] 1 ["REV. ORG. ACT" or "Revised Organic Act"]. The Court has specific jurisdiction in this case as the defendant is charged with territorial offenses carrying the possibility of imprisonment beyond fifteen years. *See* REV. ORG. ACT § 22(b), 48 U.S.C. § 1612(c), and V.I. CODE ANN. tit. 4, § 76(b) (1997).[2]

## I. FACTS

The defendant and Mr. Fredericks were charged in a superceding information dated August 4, 1993, with some thirty-seven counts of criminal misconduct over the course of a year-and-a-half crime spree. The defendant and his accomplice seemed to prefer to

---

[1] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 1997) (preceding V.I. CODE ANN. tit. 1) ["REV. ORG. ACT" or "Revised Organic Act"].

[2] At the time this prosecution was begun, the District Court of the Virgin Islands had original jurisdiction over local criminal offenses, such as the rapes charged here, where the potential sentence exceeded fifteen years. The District Court was divested of such jurisdiction effective January 1, 1994. Act Feb. 1, 1985, No. 5040, § 3(b), Sess. L. 1984, p. 464, as amended by Act March 1, 1985, No. 5045, § 1(b), Sess. L. 1985, p. 3; Act Oct. 14, 1986, no. 4206, § 107, Sess. L. 1986, p. 236; Act Sept. 30, 1993, No. 5890, §§ 1, 3, Sess. L. 1993, p. 214. ("[S]ubject to the concurrent jurisdiction conferred on the District Court of the Virgin Islands by sections 21 and 22 of the Revised Organic Act of the Virgin Islands, as amended, the Territorial Court shall have original jurisdiction in all criminal actions.") The District Court of the Virgin Islands' jurisdiction over local criminal offenses is now limited to those breaches of territorial law arising from the same factual nexus as federal criminal violations. REV. ORG. ACT § 22(c), 48 U.S.C. § 1612(c).

burglarize the homes of young couples. They would then rob the residents at gun and/or knife-point, ofttimes raping the female occupant. During one of these predations, the defendant and his accomplice kidnaped the female victim for a subsequent rape off the burgled premises.

Further, defendant Byers returned to the scene of one of his earlier rapes and abducted the victim for rape a second time claiming that he was in "love" with her. This victim was able to identify Byers as her attacker as during this second attack, Byers removed his mask.

Physical evidence led the police to the defendant and he was arrested pursuant to a warrant on October 22, 1991. He has been in custody since that time.

On November 10, 1994, this Court permitted the defendant to enter a plea of guilty to counts three (aggravated rape under 14 V.I.C. § 1700(c) occurring January 18, 1990), twelve (aggravated rape under 14 V.I.C. § 1700(c) occurring January 20, 1990), and twenty-two (aggravated rape under 14 V.I.C. § 1700(c) occurring April 12, 1990) of the superceding information. In exchange for his guilty plea and his pledge to cooperate and testify in the prosecution of his co-defendant Fredericks, the government agreed it would at the appropriate time seek dismissal of the remaining twenty-six counts, would recommend that the sentences on these three counts be served consecutively and that the government would seek to have the Court treat all three as first offenses.[3]

Before tendering his plea, the defendant was sworn and all his statements and answers to the Court's questions were given under oath. (Transcript of Plea Colloquy on Nov. 10, 1994, ["Transcript"] at 4.) During the Rule 11 plea colloquy, the Court first determined that the defendant was competent in the English language and understood the proceedings and that he was free of the influence of alcohol or drugs. (Transcript at 4-5.) He was asked if he intended to enter a plea of guilty and responded in the affirmative. (Transcript at 7.) The Court ascertained that the defendant had the opportunity and had in fact gone over the proposed agreement

---

[3] Otherwise, a second and subsequent conviction for aggravated rape carries with it a sentence of not less than twenty years. 14 V.I.C. § 1700.

with his attorney.[4] (Transcript at 7-8.) Mr. Byers stated that he understood the agreement and had no questions about the agreement or its terms. (Transcript at 8-9.) He affirmed his signature on the agreement. (Transcript at 8.) The defendant also acknowledged the proposed plea agreement contained the entire agreement between himself and the government. (Transcript at 9-10.)

Under further questioning, Byers acknowledged he was pleading guilty to three counts of aggravated rape. (Transcript at 10-11.) He agreed the possible sentence for each count was a term of years up to life in prison, with a mandatory minimum of 10 years. (Transcript at 11-12.) He further understood that the mandatory minimum sentence must be served in its entirety, during which he would not be eligible for parol or probation. (Transcript at 12.) While his plea agreement called for the government to recommend concurrent sentencing, the defendant understood that the Court retained both the power to run the sentences on the three counts consecutive to each other and to impose a sentence above the ten-year mandatory minimum. (Transcript at 14.)

The elements of the offenses were explained to the defendant and Byers said he understood and had no questions about them. (Transcript at 14-15.) He acknowledged his agreement and obligation to provide truthful assistance to the probation office and to the prosecution in this case, including his testimony against his co-defendant, and that failure to do so would be a violation of the plea agreement. (Transcript at 15-18.) In addition to the written explanation in the application Byers signed, the Court explained his constitutional rights guaranteed to him. (Transcript at 22-24.) He stated that he understood each right and that he would be waiving each of them by pleading guilty. (Transcript at 24.) The defendant affirmed that no one had threatened him or brought any pressure to bear on him, and that his guilty plea was entered voluntarily of his own free will. (Transcript at 24-25.)

The government then placed on the record an offer of proof on each separate count to which the defendant pled guilty. (Transcript at 25.) That proffer was that the government could link Byers to each of the three rapes by means of DNA evidence, that one of his

---

[4] At the time his plea was taken, the defendant was represented by Samuel Hall, Esq.

victims had positively identified him from a photo array, and that the defendant had confessed to each count of aggravated rape. (Transcript at 25-29.) On that basis, the Court found a sufficient factual foundation to accept the defendant's pleas of guilty to the three counts of aggravated rape. (Transcript at 29.)

The Court questioned the defendant on his satisfaction with his attorney, and whether he had any questions that he wanted to raise or that he wanted his attorney to raise. He answered, "No." (Transcript at 29.) The Court asked the defendant if he was satisfied in all respects with the representation he had received. He answered, "Yes, sir." (Transcript at 30.) Lastly, the Court asked him if there was anything he wanted his attorney to do that his attorney had not done. Byers responded, "No, sir." (Transcript at 30.)

The Court then read each of the three counts to which the defendant was to plead guilty in open court. The Court asked the defendant after reading each charge how he pled, and Byers replied, "Guilty," to all three. (Transcript at 30-33.) On the basis of the Court's examination and his responses during the plea colloquy, the Court found that the defendant was competent and that, after having been fully advised of his rights, he had knowingly and voluntarily entered a plea of guilty on each of the three specified counts. (Transcript at 33.) The proceedings were then closed and the plea agreement was filed with the Court the same day.

On September 4, 1996, the defendant wrote to the Court requesting new appointed counsel and withdrawal of his plea. As a basis therefor, Byers claimed his counsel was not providing information about his case to him and had not made an effort to negotiate a better plea agreement for him. He further stated that the plea he had entered was unfair and was made without knowledge of its contents and at the insistence of his first attorney, Samuel Hall. Nineteen days later, having received a copy of his client's letter to the Court, Attorney Hall moved to withdraw as counsel. Mr. Hall was relieved as counsel and Attorney Mackay was appointed to represent the defendant.

After consulting with Ms. Mackay and one of her associates, as well as members of his family, Mr. Byers had a change of heart. At a hearing before the magistrate judge on February 19, 1997, the defendant requested leave to take back the motion to withdraw his

plea. (Transcript of Feb. 19, 1997, Magistrate's Hearing ["Tr. Mag. Hr'g"] at 2.) Before granting Byers' motion, the magistrate judge carefully elicited the defendant's thorough explanation of his intentions. The defendant was asked if it was his decision to withdraw the motion and abide by his earlier plea of guilty, and he answered, "Yes, sir." (Tr. Mag. Hr'g at 3.) He was asked if he was satisfied with the advice he had received from his attorney, Ms. Mackay, and he again answered, "Yes, sir." (*Id.*) The magistrate judge then posed the issue to the defendant again:

> So you feel comfortable with the decision that you've made to withdraw this motion and you're ready to accept the consequences and go forward to deal with the case which will be tried and then with the sentencing which will ultimately be imposed on you?

The defendant replied, "Yes, sir." (Tr. Mag. Hr'g at 3-4.) The magistrate judge, having found that the defendant had knowingly made his decision to withdraw the motion in consultation with his attorney and his family, permitted Byers to take back his motion to withdraw his guilty plea. (Tr. Mag. Hr'g at 4.)

In a letter received in chambers February 19, 1998, Byers again sought leave to withdraw his plea, once more alleging that his attorney had misled him and failed to provide access to the evidence against him. He further claimed he had been coerced into the plea by the United States Attorney. Attorney Mackay filed her motion to withdraw as counsel on February 20, 1998. In her supporting memorandum, she denied each of the defendants allegations against her.

On Wednesday, May 13, 1998, the Court held a hearing on the defendant's renewed request to withdraw his plea of guilty. Present were the defendant, Attorney Mackay, and government counsel. The Court required the defendant to provide sworn testimony, first permitting him to state his reasons for seeking to withdraw his plea and for new counsel. The Court then questioned the defendant to further understand his reasons. Although Attorney Mackay and government counsel were given the opportunity to question Byers, they each declined the invitation.

Mr. Byers testified he had been questioned early in the investigation by government counsel and the FBI without his attorney

present.[5] He further testified that his confessions had been coerced from him. Byers told the Court that a fellow inmate had "advised" him that his lawyer should have objected to this questioning and that this information formed part of the basis why he wanted to withdraw his plea and have new counsel appointed.

He claimed that his attorney never went over the plea agreement with him and that, before the hearing on February 19, 1997, to consider his initial motion to withdraw his plea, Attorney Mackay counseled him that he should stick with his plea because, if he did not, "it would make her look bad." Under questioning by the Court, the defendant asserted that his representations that he was satisfied in all respects with both Mr. Hall's and Ms. Mackay's counsel in his case had been made either under compulsion by his attorneys or the government.

Attorney Mackay next took the stand and was sworn. She gave a much different account of her representation of the defendant. She told how she and one of her associates had met with the defendant both here in St. Thomas and at the federal detention center in Puerto Rico. She said they had gone over the DNA and other evidence in detail with the defendant and informed him of the serious risks of greater punishment he faced if he withdrew his plea and went to trial. Attorney Mackay stated that she had counseled the defendant not to withdraw his plea, based upon her assessment of the risks and weight of the government's case. She denied having coerced the defendant in any way to withdraw his motion. Counsel specifically denied ever having told the defendant to stick with his guilty plea because to do otherwise would make her look bad. She steadfastly insisted that she did not mislead or coerce the defendant about any issue in his case.

Though he initially declined to ask any questions, Mr. Byers reconsidered and asked Ms. Mackay whether she had in fact advised him to stay with his plea. Again, Attorney Mackay stated she had in fact recommended that the defendant remain faithful to his plea agreement based upon her assessment of the strength of

---

[5] The defendant was insistent this questioning was done by Ms. Weyler, now government counsel. The Court notes that at the time this alleged questioning was undertaken, Ms. Weyler was not employed with the United States Attorney's Office and that government counsel in this case was Assistant U.S. Attorney Susan Via.

321

the government's case and the risk that he could be convicted of many more charges and receive a significantly longer sentence. Ms. Mackay agreed that she had given this counsel twice; once during a meeting with him in the Marshall's holding cell and again in a meeting with the defendant and his family before the hearing of February 19, 1997. Government counsel declined to question Attorney Mackay.

At the close of the hearing, the Court denied the defendant's renewed motion to withdraw his guilty plea and granted Attorney Mackay's motion to withdraw as defendant's counsel. This memorandum and order supplements and clarifies the Court's earlier ruling.

## II. ANALYSIS OF LAW AND FACTS

The Court will dispose of the defendant's motion to withdraw his plea of guilty and Attorney Mackay's motion to withdraw as counsel *in seriatim*.

### A. Defendant's Motion to Withdraw His Plea of Guilty

■ The Court first outlines the legal standard for evaluating defendant's motion to withdraw his plea of guilty.[6] It will then enter its findings and apply that legal framework to defendant's motion.

#### 1. Evaluation of Allegations of Attorney Misconduct as Grounds for Withdrawal of a Criminal Defendant's Guilty Plea

Before sentencing, a federal criminal defendant who has knowingly and voluntarily entered a plea of guilty may withdraw his or

---

[6] "Three factors must be considered when a district court evaluates a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) whether the government would be prejudiced by his withdrawal; and (3) the strength of the defendant's reasons to withdraw the plea. *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992) (citing *United States v. Huff*, 873 F.2d 709, 712 (3d Cir. 1989)). The Court notes that Byers has never asserted he is innocent of the crimes to which he pled guilty.

Further, the Court notes that, in as much as it has determined herein that Byers has given no "just and fair reason" why the Court should permit him to withdraw his plea, the Court is not obliged to determine whether there would be prejudice to the Government if it permitted him to withdraw his plea and proceed, instead, to trial. *See United States v. Harris*, 44 F.3d 1206, 1210 n.1 (3d Cir. 1995) (citing *United States v. Martinez*, 785 F.2d 111, 115-16 (3d Cir. 1986)).

her plea upon showing of any just and fair reason. FED. R. CRIM. P. 32(e).[7] Generally, permission to withdraw a plea before sentencing will be more liberally granted than after imposition of sentence. *United States v. Trott*, 779 F.2d 912, 915 (3d Cir. 1985.) District judges, however, retain substantial discretion to deny a motion to withdraw a plea of guilty. *United States v. Jones*, 979 F.2d 317 (3d Cir. 1992.) Indeed, "[a] simple shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to force the government to incur the expense, difficulty and risk of trying a defendant, who has already acknowledged his guilt before the court." *Id.* at 318.

The Sixth Amendment entitles a criminal defendant to counsel whose undivided loyalties lie with him. Byers seeks to withdraw his guilty plea alleging that his attorney coerced him not to pursue his first motion to withdraw the plea. Such an allegation, if true, would constitute a "just and fair reason" for permitting the defendant to withdraw his guilty plea. *See United States v. Petersen*, 92 F.3d 1174, 1996 U.S. App. LEXIS 20705 (3d Cir. 1996) (unpublished opinion.) A potential conflict arose between the defendant and Attorney Mackay the moment the defendant accused her of illicit coercion. *Id.*at 11 (citing *Lopez v. Scully*, 58 F.3d 38, 41 (2d Cir. 1995.)

In *Petersen*, the defendant shot a U.S. Navy officer to death execution style after one of his codefendants had beaten the officer near to unconsciousness with a spiked club. He pled guilty to a host of charges including second degree murder. Subsequently, Petersen sought to withdraw his guilty plea alleging that his appointed counsel had misled him about the terms of his plea agreement. Recognizing that his client's allegations created a potential conflict of interest, counsel asked to withdraw from the representation. The district court, specifically this judge, denied the motion to withdraw the plea and denied the motion of counsel to withdraw from representing the defendant without an evidentiary hearing in the belief that the defendant's statements under oath at

---

[7]If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

the plea colloquy could be given credence, namely, that he understood the terms of the plea agreement and had no questions about it. *Id.* at 1. The Court of Appeals for the Third Circuit vacated the sentence, saying that where a criminal defendant alleges that his counsel negligently or intentionally misled him about a material term of a plea agreement, the district court is obliged to hold an evidentiary hearing on the issue. *Id.* at 12. At such a hearing the district court is required to take sworn testimony from any relevant witness including, at a minimum, the defendant and counsel against whom the allegations lie. The defendant must be given an opportunity to cross examine any adverse witnesses. Following the hearing, the district court is obliged to file findings of fact. *Id.* Ordinarily, but not in all cases, the district court is obliged to appoint new counsel to represent the defendant at the evidentiary hearing. *Id.*

In an effort to craft an appropriate procedure for implementing the Court of Appeals' holding in *Petersen,* the Court has adopted a two-track approach. In the ordinary course, the Court will first make an initial evaluation of the defendant's claim of attorney negligence or misconduct. Whether such allegations, on their face, present a colorable basis to believe the attorney acted wrongly, a *prima facie* case of misfeasance or malfeasance, if you will, determines the next step.

If there is a colorable basis to believe the defendant's claim, the Court will appoint new counsel right away. New counsel will then be permitted reasonable time to become familiar with the case and investigate the defendant's allegations. The evidentiary hearing mandated in *Petersen* will be held and the court will decide whether to allow the defendant to withdraw his or her plea.

■ If, on the other hand, defendant fails to present a *prima facie* case for his or her claims of attorney misconduct or negligence, the court will hold the evidentiary hearing without new counsel, giving the defendant an opportunity to present evidence and, at a minimum, to make a sworn statement upon the record and to examine his or her counsel under oath. The court will then reevaluate the defendant's claims and rule whether to permit the defendant to withdraw the guilty plea and whether it is necessary to appoint new counsel. While the *Petersen* hearing may often

become so adversarial that it creates a conflict between counsel and client when none existed before, there may be instances where this will not be necessary. Factors to be considered are whether the plea is withdrawn, whether the claims are fabrications, whether the defendant is attempting simply to manipulate the system to put off the day of reckoning, whether the defendant's claims have resulted in actual hostility toward counsel, and whether anything remains for counsel to do other than allocute at sentencing. The Court simply cannot conceive that it was the intent of the Court of Appeals in *Petersen* for a defendant to get new counsel merely by making baseless claims of neglect or wrongdoing against his or her court appointed counsel.

Given that Byers claims against Attorney Mackay raised no colorable basis to give them credence on their face, the Court conducted an evidentiary hearing without appointing him new counsel. That hearing supplied the foundation for the findings of fact which follow.

### 2. Findings of Fact on Basis of Defendant's Motion

The Court finds that:

1) Attorney Mackay did in fact counsel the defendant not to withdraw his plea of guilty on the basis of her analysis, clearly supported in the record, that the defendant faced grave risk of conviction and far more serious punishment if he went to trial than if he stayed with his guilty plea;

2) Attorney Mackay and her associate fully explained the type, weight and sufficiency of the government's evidence against the defendant;

3) The defendant has not put forward any credible evidence to support his claim Attorney Mackay coerced him into standing upon his plea of guilty;

4) Attorney Mackay did not coerce her client to withdraw his prior motion to withdraw his guilty plea;

5) The only credible reason Byers gave for wanting to withdraw his plea was "jail house lawyer" advice from another inmate; and,

6) The defendant has never even hinted that he is not guilty of the crimes to which he has pled guilty.

There is no reason to give the defendant's testimony any credibility over that of Ms. Mackay. She has no cause to dissimilate.

325

On the other hand, the defendant, seeing the rapid approach of the time when he must make good on his agreement to testify against Mr. Fredericks and the day when he will be sentenced for his own crimes, has every reason to lie.[8]

7) The Court therefore finds that Attorney Mackay did not misrepresent Byers' interests.

The defendant having advanced no just and fair reason to withdraw his plea, his request to do so must be denied.

## B. Attorney Mackay's Motion to Withdraw as Counsel

The American Bar Association's Model Rules of Professional Conduct govern the practice of law before the District Court of the Virgin Islands. *See* LRCi 83.2(a) (1.) Model Rule 1.16(b) (5) provides that an attorney may withdraw from representation where such has been rendered unreasonably difficult by the client.

While it is a close call, the Court accepts Attorney Mackay's representation that this has happened here. The defendant has made accusations he has no confidence in her ability to represent him. Upon reflection, the Court is not convinced that these claims go to the very heart of counsel's obligation to faithfully represent Byers' interests. Since all that is required is for Attorney Mackay to evaluate the presentence report and allocute at sentencing, it probably was not necessary to relieve her as counsel. After all, defendants are not entitled to choose their appointed attorneys, and this is the second time Byers has moved to withdraw his plea and his present counsel is the third attorney appointed to represent him.[9] Since Attorney Mackay's motion was granted at the close of the evidentiary hearing and Byers has new appointed counsel, this decision will not be undone.

## III. CONCLUSION

■■ For the reasons set forth above, defendant's motion to withdraw his plea of guilty must be denied. Attorney Mackay's

---

[8] At the time of the evidentiary hearing on defendant's motion, his codefendant, Mr. Fredericks, was still awaiting trial. In the interim of that hearing and the publication of this opinion, Mr. Fredericks too has pled guilty.

[9] Byers is now represented by Henry Carr, Esq.

withdrawal as defendant's counsel will be allowed to stand. An appropriate order shall issue.

ENTERED this 6th day of July, 1998.

## ORDER

Upon consideration by the Court it is hereby

ORDERED that Kathleen Mackay, Esquire, is relieved as appointed counsel in the above-captioned matter. And it is further

ORDERED that the defendant, Reginald S. Byers, Jr.'s motion to withdraw his plea of guilty is DENIED.

ENTERED this 6th day of July, 1998.