**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-3582
_____

UNITED STATES OF AMERICA

v.

ERIC DESHAWN IRVIN (1)
aka COOKIE E (1),
Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 04-cr-00309)
District Judge: Gustave Diamond

Submitted May 11, 2011

Before: SMITH, CHAGARES, and VANASKIE, Circuit Judges.

(Filed : May 31, 2011)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Defendant Eric DeShawn Irvin pleaded guilty to one count of conspiracy to

distribute and possess with intent to distribute one kilogram or more of heroin, in

violation of 21 U.S.C. § 846. He now appeals from that conviction and the resultant

sentence of 262 months of imprisonment. On appeal, Irvin contends that the District Court abused its discretion in denying his eve-of-sentencing motion to withdraw his guilty plea and his day-of-sentencing motion for new counsel. The Government counters that Irvin's appeal is barred by the terms of an appellate waiver, which was a condition of his plea agreement. We will affirm the conviction, but vacate and remand for resentencing.

## I.

Because we write solely for the benefit of the parties, we will only briefly recite the essential facts. Prior to pleading guilty before the District Court, Irvin signed a plea agreement with the Government, in which he waived his right to take a direct appeal from his conviction or sentence, subject to the following exceptions:

> (a)  If the United States appeals from the sentence, Eric DeShawn Irvin may take a direct appeal from the sentence.
>
> (b)  If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Eric DeShawn Irvin may also take a direct appeal from the sentence.

Appendix ("App.") 162. Directly above Irvin's signature block, the plea agreement stated:

> I have received this letter from my attorney, Mark D. Lancaster, Esquire, have read it and discussed it with him, and I hereby accept it and acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the Western District of Pennsylvania.

App. 165-66. During the change-of-plea hearing at which Irvin entered his plea of guilty, the District Court conducted a Rule 11 colloquy with the defendant, in which it ensured

2

that Irvin understood (1) the charges to which he was pleading guilty, (2) the right to trial by jury that he would relinquish by entering the guilty plea, and (3) the statutory mandatory minimum penalty of ten years to which he would be subject upon pleading guilty, as well as the maximum possible penalty of life imprisonment that he could face at sentencing. The District Court also confirmed that Irvin was satisfied with his counsel's representation, ensured that Miller's plea was voluntary and not the result of any coercion or promises, and explained that the court alone would determine the actual sentence to be imposed, using the United States Sentencing Guidelines as a guide to determine the proper starting point.

The attorney for the Government then recited, at the District Court's request, the terms of the plea agreement, including the appellate waiver provision. Irvin acknowledged, under oath, that he had read the plea agreement, that he had discussed it with his counsel, and that he had not been threatened or coerced into signing it. When asked whether he had been promised anything in exchange for entering a guilty plea, Irvin stated only that he had been told by his lawyer that if he went to trial, he "could be looking at more time." App. 50. Finally, the Government set forth a factual basis and the District Court, satisfied that it had been knowingly and voluntarily made, accepted Irvin's guilty plea.

One day before sentencing was to occur and approximately one month after the District Court issued its tentative findings based on the Pre-sentence Investigation Report ("PSR"), Irvin filed a pro se motion to withdraw his guilty plea. Irvin alleged that he had pleaded guilty based on his lawyer's representation that "if I took the plea he could get

3

me 10 years." App. 87. He claimed that he was promised that the Government would cap the quantity of heroin to a certain amount so that his sentence would fall within a particular advisory Guidelines range, but he did not specify what he anticipated that range to be. He further alleged that he and his family had made repeated unsuccessful efforts to contact his lawyer over the five months preceding sentencing and that he no longer trusted his lawyer to represent him.

Irvin's lawyer also received a copy of the pro se motion to withdraw on the day before sentencing. At sentencing, he brought the issue to the District Court's attention, stating that he thought it would be "difficult, if not impossible, for me to continue to represent [Irvin]." App. 96. The District Court denied what it construed to be a request to postpone sentencing in order to obtain substitute counsel, finding that the delay caused by such action would be onerous relative to any potential prejudice to Irvin's rights. The District Court also denied Irvin's pro se motion to withdraw the guilty plea because Irvin had not asserted his innocence and had not put forth a fair and just reason to support the withdrawal.

After hearing arguments from the parties, the District Court sentenced Irvin to 262 months of imprisonment, the very bottom of the advisory Guidelines range. This appeal of the conviction and sentence timely followed.

## II.

The District Court properly exercised jurisdiction over this criminal matter pursuant to 18 U.S.C. § 3231. Despite the presence of an appellate waiver in Irvin's plea agreement with the Government, we retain jurisdiction to review the District Court's final

4

judgment of conviction and sentence pursuant to 28 U.S.C. § 1291. See United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007). But "we will not exercise that jurisdiction to review the merits of Irvin's appeal if we conclude that [he] knowingly and voluntarily waived h[is] right to appeal unless the result would work a miscarriage of justice." Id.

### III.

Because the government has invoked the appellate waiver set forth in Irvin's plea agreement, we will decline to "review the merits of [Irvin's] appeal if we conclude (1) that the issues he pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." United States v. Corso, 549 F.3d 921, 927 (3d Cir. 2008). "Generally, our review of the validity and scope of appellate waivers is plenary." Id. at 926-27.

The language of Irvin's appellate waiver is broad in its scope and clear in its import: Irvin agreed to waive the right to take a direct appeal from his conviction or sentence, unless (1) the government appealed from the sentence, (2) the sentence exceeded the applicable statutory limits set forth in the United States Code, or (3) the sentence unreasonably exceeded the Guidelines range determined by the District Court. This case presents none of these three circumstances and, thus, Irvin's appeal of his conviction and sentence falls within the scope of the waiver.

Irvin argues, however, that he did not agree to the appellate waiver knowingly and voluntarily because his lawyer falsely "promised" him that he would receive the mandatory minimum sentence of ten years if he signed the plea agreement. Our

5

assessment of whether a defendant knowingly and voluntarily entered into a plea agreement that contains an appellate waiver turns on whether "the district court 'inform[ed] the defendant of, and determined[d] that the defendant underst[ood] . . . the terms of any plea-agreement provisions waiving the right to appeal or to collaterally attack the sentence' as Federal Rule of Criminal Procedure 11(b)(1)(N) requires." United States v. Mabry, 536 F.3d 231, 239 (3d Cir. 2008) (citations omitted; bracketed material and ellipsis in original).  Fed. R. Crim. P. 11(b)(1)(N) imposes a duty upon a district court during a change-of-plea hearing to "address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence."

The Government admits that the District Court violated Rule 11(b)(1)(N) in failing to address Irvin personally regarding the appellate waiver, instead relying on a recitation of the agreement's terms by the Government.  Nonetheless, we conclude that this error does not render Irvin's appellate waiver unenforceable.

Because Irvin did not object before the District Court to its Rule 11 error, he "has the burden to satisfy the plain-error rule, and must show (1) that there was an error, i.e., a deviation from a legal rule, (2) that the error was 'plain,' i.e., clear or obvious, and (3) that the error affected his substantial rights." Corso, 549 F.3d at 928 (citation omitted). Moreover, "relief on plain-error review is in the discretion of the reviewing court, and even if all three conditions are met we will exercise our discretion to correct the unpreserved error only if [Irvin] persuades us that (4) a miscarriage of justice would

6

otherwise result, that is, if the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Id. at 929 (quotations omitted).

Even assuming that the District Court's obvious Rule 11 error affected Irvin's substantial rights, we decline to exercise our discretion to correct the error. The record before us reveals that, during the Rule 11 colloquy, Irvin confirmed that he had signed the plea agreement after having an opportunity to read it and discuss it with his lawyer and that he did so voluntarily. The District Court instructed the Government to recite the pertinent terms of the plea agreement for the record. Among these pertinent terms was the appellate waiver provision, which the Government presented in detail. Irvin listened to this recitation and, on its completion, reasserted his intention to plead guilty. Notably, he reasserted such an intention after the District Court had thoroughly explained to him the potential sentencing consequences of his guilty plea. Thus, despite any deficiency in the Rule 11 colloquy regarding the appellate waiver, the record makes clear that Irvin understood that, by pleading guilty, he was giving up his right to appeal, except in very narrow circumstances. And, importantly, he understood that the plea agreement did not guarantee that he would receive an actual sentence of the statutory mandatory minimum ten years. On such a record, we must conclude that Irvin has failed to demonstrate that the District Court's error in conducting the Rule 11 colloquy seriously affected the fairness, integrity or public reputation of the judicial proceedings.

Still, Irvin asks us to refrain from enforcing the waiver. He suggests that to do so would work a manifest injustice because the District Court abused its discretion in denying his day-of-sentencing motion for new counsel. We agree.

7

We review the District Court's denial of Irvin's day-of-sentencing request for new counsel for an abuse of discretion. United States v. Gibbs, 190 F.3d 188, 207 n.10 (3d Cir. 1999). In order to warrant a last minute substitution of counsel, a defendant must demonstrate "good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney." United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982). "If the district court denies the request to substitute counsel and the defendant decides to proceed with unwanted counsel, we will not find a Sixth Amendment violation unless the district court's 'good cause' determination was clearly erroneous or the district court made no inquiry into the reason for the defendant's request to substitute counsel." United States v. Goldberg, 67 F.3d 1092, 1098 (3d Cir. 1995).

The day before sentencing, the District Court received Irvin's pro se motion to withdraw his guilty plea. In this letter motion, Irvin suggested that he had been unable to contact his lawyer for five months and that he felt he could no longer trust his lawyer to vigorously defend him. In light of Irvin's letter motion, Irvin's lawyer told the District Court at sentencing that there had been a "complete meltdown of the attorney/client relationship" and asked to be excused from further representing Irvin because he felt it would be "difficult, if not impossible" to continue on in that role. App. 96. Without making any inquiry of Irvin as to why he felt his lawyer could not adequately represent him at sentencing, the District Court denied the request, finding that the delay caused by a substitution of counsel would be onerous in relation to the prejudice to Irvin's rights that would result from having his lawyer continue to represent him.

8

We have made clear that the District Court may properly weigh its interest in the efficient administration of criminal justice against the rights of the defendant, in order to determine whether good cause for a request to substitute counsel exists. Goldberg, 67 F.3d at 1098. But we have made equally clear that the district court must at least inquire as to the reasons underlying the defendant's request before finding that he has failed to demonstrate good cause. Id.; see also United States v. Rankin, 779 F.2d 956, 960 (3d Cir.1986) ("[A] rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation."). And we think that the District Court's failure to so inquire of Irvin is not only erroneous, but rises to the level of manifest injustice sufficient to justify setting aside the appellate waiver to which Irvin assented in his plea agreement.[1] Accordingly, we will vacate Irvin's sentence and remand for resentencing after a thorough inquiry as to whether Irvin has demonstrated good cause for his request to substitute counsel.

Irvin additionally assigns error to the District Court's denial of his pro se eve-of-sentencing motion to withdraw his guilty plea. "We review a district court's ruling denying a defendant's motion to withdraw his guilty plea before sentencing pursuant to an abuse of discretion standard." United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003) (citing United States v. Harris, 44 F.3d 1206, 1210 (3d Cir.1995)). We have explained that "[o]nce a [district] court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." Jones, 336 F.3d at 252. Rather, a

---

[1]Despite this conclusion, we sympathize with the District Judge's understandable frustration at the delay interposed by Irvin's last minute request to substitute counsel.

defendant seeking to withdraw his plea bears the substantial burden of demonstrating that a fair and just reason exists for permitting him to do so. Id.; see also Fed.R.Crim.P. 11(d)(2)(B). In evaluating whether a defendant has shown a "fair and just reason" for the withdrawal, a district court "must consider three factors ... (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." Id. Because the Government has not asserted that it would be prejudiced by withdrawal, we need only consider the first two factors.

The first factor — whether the defendant asserts his innocence — is readily disposed of because Irvin has never asserted any such thing. As to the second factor, Irvin asks this court to permit him to withdraw his guilty plea because his counsel allegedly promised him that he would receive a sentence of ten years of imprisonment if he entered the plea agreement. He claims that this misrepresentation on the part of his lawyer rendered his guilty plea unknowing and involuntary. We disagree.

The record before us reveals that, before accepting the guilty plea, the District Court ensured that Irvin understood that, upon pleading guilty, he faced a mandatory minimum penalty of ten years of imprisonment and a maximum penalty of life in prison and that the actual sentence would be determined by the court alone, using the United States Sentencing Guidelines as a guide. The District Court also verified that Irvin's plea was voluntary and not the result of coercion or any promises. Notably, when asked if he had been promised anything other than what was contained in the plea agreement, Irvin

10

stated only that he had been told that he "could be looking at more time" if he went to trial. App. 50.

"The district court retains a great deal of discretion to deny a withdrawal motion." United States v. Jones, 979 F.2d 317, 318 (3d Cir.1992), superseded by statute on other grounds as recognized in United States v. Roberson, 194 F.3d 408, 417 (3d Cir. 1999). Reviewing the record of the plea colloquy in this case, the District Court found that, even if Irvin's lawyer did in fact misrepresent the sentence that Irvin would receive upon pleading guilty, Irvin displayed a complete understanding of the actual sentencing ramifications of his guilty plea at the subsequent plea colloquy.[2] Accordingly, the District Court held that Irvin had not met his substantial burden of demonstrating a fair and just reason for withdrawing his plea. Under the circumstances presented here, we are compelled to conclude that the District Court acted within its discretion in so holding. At its essence, Irvin's only reason for moving to withdraw his plea appears to be that he was dissatisfied with the advisory Guidelines range set forth in the District Court's tentative findings. But, as we have made clear, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the

---

[2] We note that the District Court incorrectly noted in its memorandum that it "expressly informed [Irvin] that he would not later be permitted to withdraw his guilty plea if he was not satisfied with the advisory guidelines sentencing range as calculated by the court. . . ." App. 90. The District Court did no such thing. Rather, as described above, the attorney for the Government detailed, at the District Court's instruction, the limited situations in which Irvin would be permitted to appeal his conviction or sentence. This factual error on the District Court's part does not change the outcome of our analysis, however, since the record makes clear that Irvin understood the terms of the plea agreement, as well as the sentencing consequences of his guilty plea, and nonetheless desired to plead guilty.

11

expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." Jones, 979 F.2d at 318. Accordingly, we find no abuse of discretion in the District Court's denial of Irvin's motion to withdraw the guilty plea and will, therefore, affirm his conviction.

IV.

For the reasons set forth above, we will affirm Irvin's conviction, but we will vacate his sentence and remand for resentencing after a thorough inquiry as to whether Irvin has demonstrated good cause for his request for new counsel.