

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-14-2003

# USA v. Jones

Precedential or Non-Precedential: Precedential

Docket No. 01-4435

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Jones" (2003). *2003 Decisions.* Paper 324.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/324

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 14, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4435

UNITED STATES OF AMERICA,
Appellee

v.

DONALD JONES,
Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. No. 00-cr-00432)
District Judge: Honorable John R. Padova

Argued December 9, 2002

Before: BECKER, Chief Judge,* ROTH and SMITH,
Circuit Judges

(Filed July 14, 2003)

RICHARD G. FREEMAN (ARGUED)
924 Cherry Street, 4th Floor
Philadelphia, PA 19107

Counsel for Appellant

---

* Judge Becker completed his term as Chief Judge on May 4, 2003.

AMY KURLAND (ARGUED)
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

Counsel for Appellee

---

**OPINION OF THE COURT**

---

SMITH, *Circuit Judge*:

After pleading guilty to charges of unlawful possession of a firearm by a convicted felon and witness tampering, defendant Donald Jones was sentenced to 130 months in prison, three years of supervised release, and a $700 fine. Jones now appeals, arguing that the District Court erred: (1) by denying his motion to withdraw his guilty plea, and, later, (2) in failing to hold a competency hearing before sentencing Jones. We will affirm the District Court's denial of Jones's motion to withdraw his guilty plea. However, we will vacate the sentencing order for the District Court's failure to hold a competency hearing and remand to the District Court for proceedings consistent with this opinion.

## I. Facts and Procedural History

On February 8, 2000, defendant Jones's girlfriend, Rhonda Turner, placed a 911 call to the Philadelphia police. She reported to the police that on the evening of February 7, Jones had returned home brandishing a weapon and demanding the use of her car. Jones purportedly sought to use the car to pursue some rival drug dealers who had robbed dealers then working for him. According to the police investigation report, the following day, February 9th, officers entered Jones's house pursuant to a warrant and found him in bed. The police report states that "the defendant was asked if he had any weapons and Jones said YES and when [police officer] Bins asked where the weapon was JONES moved the pillow and under the pollow [sic] was the gun." Philadelphia Police Dept. Investigation Report dated Feb. 9, 2000 (emphasis in original). The gun was a

loaded nine millimeter Luger with an obliterated serial number.

Following his arrest and detention, Jones wrote a number of letters to Ms. Turner from jail, threatening harm to her if she refused to alter her testimony. The letters contained statements that Jones "knows where [Ms. Turner's] people live," and that "this is not the first time [Turner had] crossed [Jones]." He also warned that "I just hope I don't have to send my boys to do anything I don't want to but might have to."

On October 13, 2000 and December 4, 2000, Jones and his attorney, Rossman Thompson (hereinafter "prior counsel"), met with attorneys for the Government at Jones's request to determine whether Jones could provide any helpful information in exchange for a downward departure under the United States Sentencing Guidelines. Two Assistant United States Attorneys, agents from the Bureau of Alcohol, Tobacco, and Firearms, and representatives from the Philadelphia Police Department Narcotics Division attended the proffer meetings. Jones was unable to provide information that the Government found helpful, and the parties failed to reach a plea agreement.

Jones pleaded guilty on December 4, 2000 to one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(1). On March 5, 2001, the day his sentencing was scheduled to take place, Jones became upset and struck his prior counsel. He then requested the appointment of new counsel and sought to file a motion to withdraw his guilty plea. The District Court appointed new counsel, Richard Freeman (hereinafter "current counsel"), and granted Jones additional time to file his motion. On May 31, 2001, after a hearing on Jones's motion to withdraw his guilty plea, the District Court denied that motion, and later denied his pro se "appeal" of that ruling on June 21, 2001.[1]

---

1. The record does not reflect whether the District Court deemed Jones's "appeal" a motion for reconsideration. The docket entry for June 21, 2001 simply indicates that the District Court entered an order "denying [defendant's] appeal for [defendant's] motion to withdraw his guilty plea."

On August 28, 2001, during a hearing regarding other pro se motions that Jones had filed, the Government notified the District Court that it had received a letter from the Federal Bureau of Prisons stating that Jones had been prescribed psychiatric medication while in prison. In light of this development, the Government requested that the Court hold a "brief" competency hearing prior to sentencing. The Court agreed to do so.[2] The District Court then questioned Jones about his medication. Jones stated that while doctors had prescribed Prozac, Dilantin, and "a few other psychiatric medications" for him, he had not been taking his medication for about two weeks because he had been working on his case. The Court also asked Jones whether he had undergone a medical examination while in the prison community, and Jones responded that he was seeing a psychiatrist. The Court then concluded that it would be useful to have a report from the psychiatrist prior to the sentencing.

Two days after the hearing, on August 30, 2001, Bureau of Prisons psychologist Ira Kedson prepared a "Psychological Report" which indicated that Jones had been receiving psychiatric treatment at the Federal Detention Center since October 12, 2000, and that his current diagnoses were "Schizoaffective Disorder, Depressed Type and Polysubstance Abuse."[3] According to the report, a Bureau of Prisons physician had prescribed the antidepressant Prozac at Jones's initial psychiatric appointment to control Jones's depressed feelings. In February 2001, Jones had been prescribed the antipsychotic medication Risperdal to address his reported

2. The dialogue between the Government and the District Court was as follows: "Ms. Kurland [for the Government]: It's come to my attention that the defendant has been prescribed some psychiatric drugs while he is in prison and may I just request that next week just prior to the sentencing we have a brief hearing regarding competency? The Court: Yes. Very well." Tr. of Aug. 28, 2001 Hr'g, at 5.

3. Our review of the record did not reveal the existence of a court order requesting the preparation of this report. We presume the Bureau of Prisons report was prepared at the Government's request, pursuant to Ms. Kurland's discussion with the District Court at the August 28 hearing.

"visions" of his deceased mother. Jones also received the anticonvulsant Dilantin for his history of seizures. According to Kedson, "Mr. Jones'[s] compliance with [his] medication has fluctuated during the time it has been prescribed for him."[4] Kedson's report stated that while the Bureau had not performed a competency evaluation of Mr. Jones, "the medication should facilitate his ability to participate in his trial, since certain distracting and preoccupying symptoms (e.g. anxiety, depressed feelings, hallucinations) should be reduced or even minimized by the medication's effects." Federal Bureau of Prisons Psychological Report dated Aug. 30, 2001. The information in Kedson's report led the Government to request, by letter dated September 6, 2001, that the Court order a competency evaluation of Jones prior to sentencing. Pursuant to this request, the District Court ordered such an evaluation.

---

4. The Report provided the following chronology of Jones's compliance with respect to his medication:

> Initially, he took his Prozac as prescribed; this lasted from approximately October 2000 through March 2001. Beginning in April 2001, Mr. Jones began to only take the medication prescribed for him at night by not showing up or actually refusing to take his medications when the morning pill line was performed. When he was seen on June 12, 2001, he acknowledged that he was not taking his medications in the morning, but was taking them in the evening. In response to this, the Consultant Psychiatrist changed his medications to being administered in the evening; she also increased Mr. Jones'[s] medication doses (both the Prozac and the Risperdal) in an effort to help him with his continuing voices and depressed mood.

> Through the end of June, Mr. Jones was compliant with his medications. However, for the month of July and most of August 2001, Mr. Jones has not taken his psychiatric medication at all by not picking up his medication or by refusing it. When asked about this, Mr. Jones indicated that he had concerns about being able to work on his case when taking the medications, and so stopped taking them during the time he was doing legal work. He also indicated that he took his medications the day of the interview (August 29, 2001), and intended to continue doing so.

Federal Bureau of Prisons Psychological Report dated Aug. 30, 2001.

Dr. Jeffrey Summerton, Ph.D., performed Jones's psychological examination. Dr. Summerton's report documented that "the purpose of the evaluation was 'regarding competency and (the nature of Mr. Jones'[s]) understanding . . . of Court procedure.'" Psychological Evaluation of Jeffrey Summerton, Ph.D. dated Oct. 9, 2001, at 6 (hereinafter "Summerton Report"). The general principles for competency set forth in *Dusky v. United States*, 362 U.S. 402 (1960) served as a guide for Dr. Summerton's report.[5] Thus, Dr. Summerton

> focused upon such factors as a defendant's general knowledge and understanding of court procedure, specific knowledge and understanding of his particular legal circumstances, his ability to cooperate with counsel and participate in his defense, and his ability to tolerate stress and refrain from irrational and unmanageable behavior during trial.

Summerton Report, at 7.

In evaluating Jones's competency, Dr. Summerton employed a standard interview format that measures three adjudicative competence-related abilities: understanding, reasoning, and appreciation. Dr. Summerton opined that Jones "generally appeared to meet a number of the above-listed criteria [for competence]," such as "general knowledge and understanding of court procedure, and specific knowledge and understanding of his particular legal circumstances." *Id.* at 7. However, Dr. Summerton felt that Jones exhibited "mild impairment" in the "understanding" category.

With respect to Jones's "appreciation" score, Dr. Summerton noted that the questions were specifically "concerned with the subject's capacity to appreciate his or her own legal situation and circumstances." Furthermore, they were "structured to identify any unrealistic or

---

5. "[T]he test [of a defendant's competency] must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotations omitted).

idiosyncratic beliefs which are implausible and may reflect symptoms of mental illness." Nonetheless, while Dr. Summerton noted a number of factors apart from mental illness that might have accounted for a low "appreciation" score, *id.* at 6, Dr. Summerton's report indicated that Jones had "clinically significant impairment" in the area of "appreciation." *Id.* at 7.

Dr. Summerton also expressed concern about Jones's ability to consult with his attorney, due to Jones's feelings of having been "misled" and "disrespected" in the past. *Id.* at 6. Recognizing that this was "the more critical element at issue" in Jones's competency evaluation, Dr. Summerton opined that "it would appear that he does possess *some* ability to cooperate with attorneys in his defense and thus has shown *some* competence in this regard." *Id.* (emphasis added). In order to address Jones's difficulties cooperating with counsel, the report made specific recommendations on how Jones's cooperation with defense counsel "might be enabled, facilitated, and optimized." *Id.* Specifically, Dr. Summerton stated that counsel must be "sensitiv[e] to his admitted cognitive difficulties in learning and tailor[ ] discussion accordingly; be[ ] responsive to his inquiries; and ensur[e] the continued availability of his psychiatric medication regimen." *Id.* Ultimately, Dr. Summerton failed to render an overall conclusion that Jones was either competent or incompetent to proceed to sentencing.

Following Dr. Summerton's evaluation, the Court scheduled Jones's sentencing for December 6, 2001. At that point, the District Court had yet to conduct the competency hearing to which it had earlier agreed. At the beginning of the sentencing hearing, the Court acknowledged that "I have received a psychological evaluation of Mr. Jones which shows that a copy was sent to the Government and defense counsel." However, the Court made no findings on the record regarding that report.

During the sentencing hearing, the Government did not renew its earlier motion for a competency hearing. Neither did defense counsel expressly request such a hearing before the sentence was imposed. Nonetheless, the issue of Jones's competency lurked throughout the proceeding. During defense counsel's argument for a downward

adjustment for acceptance of responsibility, Jones's counsel requested that the District Court consider the "very comprehensive report from . . . Jeffrey Summerton who characterizes this man as a man who has failings when it comes to cognitive decision making." Tr. of Dec. 6, 2001 Hr'g, at 15. Stating, "I have taken into consideration the psychological report in this case which does indicate that from time to time Donald Jones has lost track as it were and misfired as a result of an underlying psychological disorder," the District Court granted the downward departure for acceptance of responsibility. *Id.* at 30. Later in the hearing, during allocution, Jones himself asked the Court "to take into consideration my mental problems and [to grant] some type of downward departure." *Id.* at 31. Declining to further reduce Jones's sentence, the District Court concluded that the record contained "insufficient" information to grant a downward departure for diminished capacity pursuant to Guidelines § 5K2.13 based on Jones's mental problems. *Id.* at 31-32. The District Court sentenced Jones to 130 months in prison and three years of supervised release.

## II. Jurisdiction

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

## III. Discussion

Jones raises two challenges to the District Court proceedings. First, Jones asserts that the District Court abused its discretion in denying his motion to withdraw his guilty plea. Second, he argues that the District Court erred in failing to hold a competency hearing prior to sentencing him. We conclude that Jones has not stated an appropriate basis for seeking to withdraw his guilty plea and that the District Court did not abuse its discretion in denying that motion. However, on the basis of the evidence later presented to the Court regarding his competency, there was reasonable cause to believe that Jones was not competent to proceed with sentencing. Accordingly, we will remand for a determination by the District Court as to whether a meaningful hearing on competency can now take place.

### A. The District Court's Denial of Jones's Motion to Withdraw His Guilty Plea

In March of 2001, Jones sought to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 32(e), arguing that his plea, entered December 4, 2000, was involuntary due to ineffective assistance of counsel. The District Court conducted a hearing on this issue on May 22, 2001. We review a district court's ruling denying a defendant's motion to withdraw his guilty plea before sentencing pursuant to an abuse of discretion standard. *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995).

Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim. *United States v. Brown,* 250 F.3d 811, 815 (3d Cir. 2001); *United States v. Martinez*, 785 F.2d 111 (3d Cir. 1986). Rather, pursuant to Federal Rule of Criminal Procedure 32(e), a defendant must have a "fair and just reason" for withdrawing a plea of guilty.[6] Fed. R. Cr. P. 32(e); *Brown*, 250 F.3d at 815. A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal. *Brown,* 250 F.3d at 815; *United States v. Huff*, 873 F.2d 709, 711 (3d Cir. 1989). The burden of demonstrating a "fair and just" reason falls on the defendant, and that burden is substantial. *United States v. Hyde*, 520 U.S. 670, 676-77 (1997); *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1998). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Brown,* 250 F.3d at 815 (quoting *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992), *superseded by statute on other grounds as stated in, United States v. Robertson*, 194 F.3d 408, 417 (3d Cir. 1999)).

---

6. Federal Rule of Criminal Procedure 32(e) provides, in pertinent part: "If a motion to withdraw a plea of guilty . . . is made before a sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason."

With respect to the first factor under *Brown* and *Huff*, the District Court determined that Jones had not meaningfully reasserted his innocence. Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea. "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818 (quoting *United States v. Salgado-Ocampo*, 159 F.3d 322, 326 (7th Cir. 1998)). Once a defendant has pleaded guilty, he "must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *Jones*, 979 F.2d at 318.

Jones did not meaningfully reassert his innocence. He made a blanket assertion of innocence at the May 22, 2001 hearing, but offered no credible facts in support of his claim. Defense counsel argued that the mere filing of a motion to withdraw a guilty plea "constructively asserted his innocence," but conceded on the record that "we have submitted no testimonial proof" on the issue of whether Jones had meaningfully asserted his innocence. Tr. of May 22, 2001 Hr'g, at 15. The District Court correctly determined that Jones's argument "contradicts the *Brown* standard that requires the defendant to place facts in the record" in support of the claimed defense. Nor did Jones provide a convincing reason for having taken contradictory positions at the December 4, 2000 and May 22, 2001 hearings. At the December 4 hearing, Jones listened to the Government's recitation of the material facts underlying his offenses and conceded the accuracy of those facts. Jones then denied those facts at the May 22 hearing, but did not explain why his position had changed so markedly. He merely alleged that his prior counsel had told him to agree to the facts at the December hearing.[7] Jones acknowledged that he had sent letters to Ms. Turner from prison and he failed to "present any evidence that" the gun police found

---

7. Jones testified at the May 22 hearing that "I was advised [by prior counsel] to say them things so that I could receive the 57 months to 71 months sentence." The Court then asked whether "that was not the truth, is that correct, that's what your telling me now?" Appellant responded, "yeah." Tr. of May 22, 2001 Hr'g, at 29.

under his pillow did not belong to him. *Brown*, 250 F.3d at 818. We therefore conclude that the District Court correctly determined that Jones failed to demonstrate that the first factor as stated in *Brown* and *Huff* supports his position.

As to the strength of Jones's reasons for seeking to withdraw his guilty plea, the second factor discussed in *Brown* and *Huff*, Jones asserts that he should have been permitted to withdraw his plea because it was "involuntary" in the first instance due to ineffective assistance of counsel. *See United States v. Day*, 969 F.2d 39, 45 (3d Cir. 1992). He argues that his prior counsel's representation was deficient in five respects: (1) prior counsel misled him about the length of his possible sentence under the Sentencing Guidelines; (2) prior counsel misled him into believing he had a plea agreement with the Government; (3) prior counsel was ineffective in engaging in proffer discussions with the Government; (4) prior counsel failed to adequately investigate Jones's defenses; and (5) prior counsel failed to request a continuance of Jones's sentencing.

In order for a guilty plea to be valid, it must "represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms, *Day*, 969 F.2d at 42 (*citing Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)); and (2) the defendant shows that he suffered "sufficient prejudice" from his counsel's errors. *Day*, 969 F.2d at 45.

"[A] narrow exception to the rule that defendants cannot attack the efficacy of their counsel on direct appeal" exists "[w]here the record is sufficient to allow determination of ineffective assistance of counsel." *U.S. v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991). Here, the District Court conducted a hearing with Jones and his new counsel where it specifically considered Jones's allegations concerning the representation he received from his prior counsel and the effect that representation may have had on the "voluntariness" of his guilty plea. Because this hearing

created an adequate record upon which we can consider Jones's claims, *see id.*, we may proceed to review the District Court's findings with respect to the effectiveness of Jones's prior counsel on this direct appeal. Jones has "had a chance to make a full record" on this issue, *see Day*, 969 F.2d at 45, so we review those findings using the same abuse of discretion standard that we otherwise apply to a decision on whether to permit a defendant to withdraw a guilty plea. *See United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995).

The District Court concluded that there was no credible evidence to support Jones's contentions that his prior counsel's representation was inadequate or that the representation prejudiced him. Based on our review of the record before the District Court, we conclude that the District Court did not err in making these findings.

Jones first asserted that his prior counsel "guaranteed" him a sentence of "no less than 57 months and no more than 71 months," as opposed to the higher term that the Presentence Investigation Report eventually recommended. However, the District Court engaged Jones in a lengthy and extensive colloquy at the December 4, 2000 guilty plea hearing, during which the Court asked Jones whether anyone had made any threat or promise or assurance of any kind to convince him to plead guilty. He replied in the negative. The District Court clearly warned Jones of the maximum sentences accompanying the charged offenses and specifically advised Jones that he would not be permitted to withdraw his guilty plea should his sentence be in excess of that recommended by his counsel, the Government, or the probation office. After the District Court's explanation, Jones asked to speak to his attorney, was afforded the time to do so, and then reaffirmed his intention to plead guilty. When asked at the May 22 hearing why he had failed to listen to the judge or raise his concerns regarding the length of his sentence with the District Court, Jones merely responded that his lawyer had told him "don't worry about" what the judge actually says in the courtroom. The District Court weighed this bare testimony against Jones's earlier colloquy and the lack "of some 'objective evidence' that a petitioner would have

accepted a plea offer" to find that there was no ineffective assistance of counsel. *See Day*, 969 F.2d at 45; *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991). Because the record fails to clearly demonstrate either that the misrepresentations occurred or that Jones was prejudiced, there was no error.

Jones also asserted at the May 22 hearing that his prior counsel misled him into believing that he had a plea agreement with the Government. However, Jones again failed to present any objective or other credible evidence that he believed that he had a plea agreement with the Government. *See Day*, 969 F.2d at 45. Jones had been arrested, in his estimation, between twenty to thirty times and had been convicted four times on drug charges. One of his cases had gone to trial. Jones was, therefore, no stranger to the criminal justice system and its procedures. In the instant case, the Government never showed Jones a plea agreement, and he testified at the May 22 hearing that his plea was not subject to an agreement. Thus, we cannot say that the record clearly demonstrates that he was misled by prior counsel as to the existence of a plea agreement and prejudiced thereby.

Jones's claim that his counsel failed to engage in "proffer" discussions with the Government is utterly without merit. The record reflects that his prior counsel, at Jones's request, arranged two separate proffer meetings with the Government that took place on October 13, 2000 and December 4, 2000. At these meetings, Jones had the opportunity to share information with two Assistant United States Attorneys, agents from the Bureau of Alcohol, Tobacco, and Firearms, and representatives from the Philadelphia Police Department Narcotics Division. Following the meetings, the Government concluded that Jones simply had not provided sufficient helpful information to warrant a request for a downward departure for substantial assistance under the Sentencing Guidelines.

Finally, Jones failed to substantiate his contentions that his prior counsel did not adequately investigate his defenses or effectively utilize the information he did possess; that he erroneously advised Jones that he had no defenses to the charged offenses; and that he erred in

failing to seek a continuance in sentencing. "[I]n light of all the circumstances" of this case, we conclude that the record does not indicate that "the identified acts or omissions were outside the wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. Jones has not pointed to any specific act or omission or objective evidence to support his blanket contentions. Furthermore, his allegations are undermined by his own statements in the record. At the December 4, 2000 guilty plea proceeding, Jones indicated that he was satisfied with prior counsel's representation. The Court queried him as to whether "you feel you have — that you have discussed fully your case with Mr. Thompson . . . [a]nd are you satisfied with [ ]his representation of you?" Jones answered both questions in the affirmative.

A third factor courts look to under *Brown* and *Huff* is whether the Government has demonstrated that it would be prejudiced by the withdrawal of a guilty plea. *See Brown*, 250 F.3d at 815. However, the Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea. *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995). Because we have concluded that the District Court did not err in finding that Jones failed to meaningfully reassert his innocence or provide a strong reason for withdrawing his plea, the Government was not required to show prejudice.

In conclusion, Jones has failed to meaningfully assert his innocence or point to any credible evidence in the record that demonstrates that his guilty plea was the result of the ineffective assistance of counsel. Therefore, Jones's claim of ineffective assistance of counsel does not provide a "fair and just reason" for withdrawing his guilty plea, and the District Court did not abuse its discretion in denying Jones's motion.

### B. The District Court's Failure to Hold a Pre-Sentencing Competency Hearing

During the August 28, 2001 hearing on Jones's pro se motions, the Government notified the District Court that Jones had been prescribed psychiatric medication and requested a competency hearing. The District Court agreed

to hold such a hearing. When Jones's sentencing date was reached, however, neither the parties nor the Court mentioned holding a competency hearing, and the District Court proceeded to sentence Jones without conducting such a hearing. The District Court's failure to hold a competency hearing constituted error under the circumstances of this case.

Pursuant to 18 U.S.C. § 4241(a), a criminal defendant shall be subjected to a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Where such "reasonable cause" exists, even if neither the defendant nor the Government moves for such a hearing, the court shall conduct such a hearing on its own motion. *Id.; see also United States v. Leggett,* 162 F.3d 237, 241 (3d Cir. 1998); *United States v. Renfroe,* 825 F.2d 763, 766 (3d Cir. 1987) (holding that the court must have "reasonable doubt" as to competency to order a hearing). Our criminal justice system has long recognized that " 'a person whose mental condition is such that [the person] lacks the capacity to understand the nature and the object of the proceedings[,] . . . to consult with counsel, and to assist in preparing [a] defense may not be subjected to a trial.' " *Leggett,* 162 F.3d at 241 (quoting *Drope v. Missouri,* 420 U.S. 162, 171 (1975)). The conviction of a legally incompetent person violates due process. *Pate v. Robinson,* 383 U.S. 375, 378 (1966); *Leggett,* 162 F.3d at 241.

"Since we must decide whether the district court properly applied the standard for determining the necessity of a competency hearing, our review is plenary." *Leggett,* 162 F.3d at 241; *Renfroe,* 825 F.2d at 766. If the District Court applied the proper legal standard, we review factual findings regarding competency for clear error. *Leggett,* 162 F.3d at 241 (citing *United States v. Velasquez,* 885 F.2d 1076, 1089 (3d Cir. 1989)). When evaluating a defendant's competency, a district court must consider a number of factors, including "evidence of a defendant's irrational

behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Leggett*, 162 F.3d at 242 (quoting *Drope*, 420 U.S. at 180). Other factors that are relevant to the determination "may include an attorney's representation about his client's competency." *Renfroe*, 825 F.2d at 767 (citing *United States v. Metcalfe*, 698 F.2d 877 (7th Cir. 1983)). There are, however, "no fixed or immutable signs which invariably indicate the need for [a competency hearing]," but "even one of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 180; *Leggett*, 162 F.3d at 242. "The question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Drope*, 420 U.S. at 180.

Ultimately, the Court's analysis of whether reasonable cause exists is informed by the two-pronged test for legal competence articulated in *Drope* and *Leggett*. A court must examine the unique circumstances of the case and decide whether the defendant "(1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of a trial. If either prong is not met, a court has reasonable cause to order a competency hearing." *Leggett*, 162 F.3d at 242; *see also Renfroe*, 825 F.2d at 767 (noting that this is a fact-intensive inquiry that depends on the unique circumstances of the case).

In this case, since the District Court did not hold a formal hearing on Jones's competency and proceeded directly to sentencing, we presume that the District Court did not believe Jones to be legally incompetent. Nonetheless, the question the District Court should have considered at that stage of the proceedings was not whether, "based on the information I have before me now," the evidence was "insufficient" to show that Jones lacked competency, as it appears the District Court may have done, *see* Tr. of Dec. 6, 2001 Hr'g, at 31-32, but whether there was "reasonable cause to believe that the defendant may be . . . incompetent." 18 U.S.C. § 4241(a). If such cause existed, § 4241 required a competency hearing.

Under *Drope* and *Leggett*, one factor a court must consider when determining if there is reasonable cause to hold a competency hearing is a medical opinion regarding a defendant's competence. *Leggett*, 162 F.3d at 242

(quoting *Drope*, 420 U.S. at 180). Although Dr. Summerton's report did not conclude that Jones was incompetent to proceed with sentencing, that report certainly raised some doubt. Dr. Summerton concluded that Jones exhibited "clinically significant impairment" in the "appreciation" category, which indicated a possible reduced capacity "to understand [his own] legal situation and circumstances." Summerton Report, at 6. Summerton also noted "mild impairment" in Jones's "understanding," which could have affected his "capacity for factual understanding of the legal system and the adjudication process." *Id.* Dr. Summerton did suggest that Jones's low appreciation score could have resulted from his mere reluctance to speak frankly about his own legal situation, or his cynicism about the legal system in general, rather than from a mental illness. Yet the District Court made no attempt to resolve the competing explanations for Jones's low score, despite the fact that the low score resulted in a finding of "clinically significant impairment" in an area that directly affected Jones's ability to understand the legal proceedings against him and assist in his defense.

The Summerton Report also raised concerns about Jones's ability to cooperate with his attorney. Noting Jones's anger and frustration at having been "misled," "disrespected," and "ignored" by his counsel, Summerton indicated that this "lack of trust" could negatively affect Jones's ability to consult with his attorney and assist in his defense. Summerton qualified his response by saying that Jones did possess "some competence" in this area, but advised that counsel would need to be "apprised and mindful of Mr. Jones's particular needs," including his learning difficulties and his need for "continued availability of his psychiatric medication regime" to enable Jones to cooperate with counsel.

Dr. Summerton's statement that Jones's assault on his prior counsel was caused, in part, by "compromised stability due to lack of psychotropic medication," and his insistence that counsel "ensur[e] the continued availability of [Jones's] psychiatric medication regime," Summerton Report, at 7, highlight the issue of the effect of Jones's sporadic compliance with his medication regime on his

competence. The record indicates that Jones's compliance was inconsistent over time. Both the Bureau of Prisons report that Jones's medication compliance had "fluctuated," and Jones's own statement to the District Court that he stopped taking his medication for two weeks to work on his case, attest to his sporadic compliance with his medication regime.

While we do not hold that Jones's sporadic compliance, standing alone, is necessarily cause to question Jones's competency, where, as here, the record suggests that the medication has noticeable effects on defendant's faculties, non-compliance may raise concerns that should be addressed in a competency hearing. The record confirms that Jones's physicians felt that the medication had a significant effect on his clarity of thought and ability to assist in his defense. The Bureau of Prisons report stated that the medication would facilitate Jones's ability to participate in legal proceedings by minimizing distracting and preoccupying symptoms, and Dr. Summerton expressly recommended that counsel ensure the continued availability of Jones's medications to improve his cooperation. Jones himself also noticed the impact his medication had on his functioning. During his psychological evaluation, Jones informed Dr. Summerton that

> [H]e attributed his loss of control and assaultive behavior in large part to the fact that he was not taking his psychotropic medication at the time of the [ ] hearing. He said that the (anti-psychotic) medication Seraquel affords him more "control" and "slows (him) down to think" more rationally about his prevailing circumstances. Without the benefit of his medication, Mr. Jones stated that his "mind is (messed) up"; however, when the medication "straightens (him) out", he has "time to think" and then can be "held accountable" for his actions.

Summerton Report, at 4. Jones also discussed the effects of his medication with the District Court during his December 6, 2001 sentencing hearing. He remarked that "I got a lot of different problems going on inside of me so, you know, I don't even know what's going on sometimes. And especially

[when] . . . I wasn't under my medication so I didn't know what was going on." The physicians' and Jones's testimony that Jones's medications had a significant effect on his ability to think clearly and assist in his defense, combined with the evidence that Jones's compliance was sporadic, obligated the District Court to address at a hearing the severity of Jones's non-compliance and its relationship to his competence. Instead, the District Court failed even to establish whether Jones was or was not taking his medications at the time of sentencing, despite the Court's express recognition of Jones's "underlying psychological disorder" when granting him a sentencing reduction for acceptance of responsibility.

Violent behavior, such as that exhibited by Jones in the courtroom when he became upset and assaulted his prior counsel, is also an appropriate factor for us to consider in determining whether the District Court should have conducted a competency hearing. While "[a]gitated or violent courtroom antics alone do not mandate a finding by the trial court of reasonable cause [to hold a competency hearing]," *see Leggett*, 162 F.3d at 244 (quoting *United States v. Lebron*, 76 F.3d 29, 31 (1st Cir.), *cert. denied*, 518 U.S. 1011 (1996)), evidence of irrational behavior is one factor that courts must consider when evaluating competency. *Leggett*, 162 F.3d at 242 (quoting *Drope*, 420 U.S. at 180). As the Summerton Report suggested, Jones's assaultive behavior may be reflective of his difficulty cooperating with counsel. Jones himself indicated that he lost his temper because he felt he had been "misled" by his attorney, and that his attorney had not been treating him appropriately. Any such difficulty cooperating with counsel could have compromised Jones's ability to assist in his defense, thereby creating reasonable cause to doubt Jones's competency to proceed to sentencing.

Having considered the unique circumstances of this case, *Leggett*, 162 F.3d at 242, we conclude that the Government's request for a competency hearing, Summerton's report finding "clinically significant impairment" and only "some ability to cooperate with attorneys in his defense," the impact of Jones's sporadic compliance with his medication on his ability to assist in

his defense, and Jones's violent in-court behavior, all combined to create reasonable cause to doubt Jones's competence. The District Court's unexplained failure to hold a competency hearing after expressly agreeing to do so constituted error.

The factors we have just discussed, which created reasonable cause to doubt Jones's competence, are by no means the only permissible ones for courts to consider when determining whether to hold a competency hearing. However, the presence here of other factors which could be consistent with competency does not vitiate our conclusion that reasonable cause existed under the unique circumstances of this case.

Some courts have relied on the general principle that "defense counsel will often have the best-informed view of the defendant's ability to participate in his defense," *Medina v. California*, 505 U.S. 437, 450 (1992), to support the proposition that "an attorney's representation about his client's competency" may be relevant to whether reasonable cause to hold a hearing exists. *Renfroe*, 825 F.2d at 767 (citing *United States v. Metcalfe*, 698 F.2d 877 (7th Cir. 1983)). In *Renfroe*, the defendant's trial counsel testified to Renfroe's inability to assist in structuring his own defense. *Id.* Conversely, in *Metcalfe*, when the defendant himself moved for a psychiatric evaluation on the eve of trial, his counsel refused to file the motion, and informed the court that "he had not found the defendant unable to cooperate in planning his defense." The District Court denied the defendant's motion, and the Seventh Circuit affirmed. *Metcalfe*, 698 F.2d at 879. Both *Renfroe* and *Metcalfe*, unlike this case, involved affirmative representations on the part of defense counsel as to their clients' competence or lack thereof. In the instant case, neither Jones's prior counsel nor his current counsel raised concerns regarding Jones's competency. Where, as here, we are engaging in plenary review of the District Court's decision, we cannot afford appreciable weight to defense counsel's silence as to Jones's competency, given the absence of any evidence in the record that might explain why he chose not to raise the issue.

Another factor a district court may consider in determining whether to hold a hearing is its personal observation of the defendant's demeanor in the court room. Jones's multiple appearances provided the District Court with a first-hand opportunity to weigh the medical and other evidence before it against its own experience with Jones to determine if there truly was "reasonable cause to believe [Jones] . . . mentally incompetent to the extent" necessary to warrant a hearing. Having no opportunity to observe the defendant first-hand, we must rely on the record before us to provide any evidence of his demeanor. Had the District Court made factual findings regarding Jones's demeanor, we would review those findings for clear error. However, no such findings were made in this case, and in their absence, we exercise plenary review. Accordingly, we may not defer to the District Court on this issue or draw inferences as to the extent to which he considered Jones's demeanor and whether that demeanor weighed in favor of a finding of reasonable cause to hold a competency hearing.

Having determined that the District Court was required to hold a competency hearing, we must now consider the appropriate remedy for its failure to do so. Given the inherent difficulties in retrospective competency evaluations, *nunc pro tunc* evaluations are not favored. *Drope*, 420 U.S. at 183; *Renfroe*, 825 F.2d at 767. However, as we stated in *United States v. Renfroe*:

> such a determination may be conducted if a meaningful hearing on the issue of the competency of the defendant at the prior proceedings is still possible. . . . The District Court is in the best position to determine whether it can make a retrospective determination of [the defendant's] competency during his . . . sentencing.

*Renfroe*, 825 F.2d at 767. If the District Court concludes that a retrospective determination of Jones's competency is still possible, it shall hold a competency hearing. If Jones is deemed to have been competent, no new sentencing will be required. *Id.* If the District Court determines that a meaningful hearing is no longer possible, Jones's sentence must be overturned and a new sentence imposed when he

is judged competent to proceed. *Id.* Accordingly, we will remand this case to the District Court for proceedings consistent with this opinion.

## IV.  Conclusion

For the foregoing reasons, we will affirm the District Court's denial of Jones's motion to withdraw his guilty plea. With respect to the District Court's failure to hold a competency hearing, we will vacate the judgment and remand to the District Court for proceedings consistent with this opinion.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*