

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2006

# USA v. Carroll

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1311

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation
"USA v. Carroll" (2006). *2006 Decisions.* Paper 1154.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1154

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-1311

———

UNITED STATES OF AMERICA

v.

RICHARD CARROLL,
Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 03-cr-00019-1)
District Judge: Hon. William L. Standish

———

Submitted Under Third Circuit LAR 34.1(a)
April 21, 2006

Before: SLOVITER, AMBRO Circuit Judges, and DuBOIS,[*] District Judge

(Filed May 5, 2006)

———

OPINION

———

[*] Honorable Jan E. DuBois, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

Richard Carroll, who pled guilty to one count of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a), appeals from the order of the District Court denying his motion to withdraw the guilty plea. He also appeals his sentence of 175 months' imprisonment on the grounds that it is unreasonable in violation of United States v. Booker, 543 U.S. 220 (2005), and that the requirement that he submit DNA samples as a condition of supervised release violates the Fourth Amendment.[1]

## I.

The events giving rise to Carroll's charges occurred between December 1999 and May 2000 in Pittsburgh. Carroll and Sharon Dorsch were lovers and had a daughter together. Dorsch lived in a house owned by Gerald Edward Goebert, together with the victim and Dorsch's other daughter from a previous relationship. Goebert was an old friend of Carroll's and employed him to do construction work on properties he owned. Goebert's own home was adjacent to that in which Dorsch lived. Carroll frequently stayed at Dorsch's home.

The Government alleged that Carroll repeatedly raped and sexually abused Dorsch's elder daughter from the time she was eleven until she was thirteen, often with

---

[1] We have jurisdiction to review the denial of Carroll's motion to withdraw his guilty plea pursuant to 28 U.S.C. § 1291. We have jurisdiction to review a sentence imposed in violation of the law under 18 U.S.C. § 3742(a)(1). See United States v. Cooper, 437 F.3d 324, 327 (3d Cir. 2006) (an unreasonable sentence is a sentence imposed in violation of law).

2

Dorsch's knowledge and consent. Carroll also took sexually explicit photographs of the child. He offered some of these for sale to Goebert, who scanned three of them into his computer, but did not purchase them. In fact, Goebert confronted Dorsch with the photos, but neither reported Carroll to the police. Carroll was ultimately reported to the police in December of 2002 by members of the victim's extended family who had become aware of the abuse. In addition to indicting Carroll as aforesaid, the grand jury indicted Dorsch for misprision of a felony and accessory after the fact in violation of 18 U.S.C. §§ 3-4, and Goebert for possession of three photographs depicting a minor engaged in sexual activity in violation of 18 U.S.C. § 2252(a)(4)(B).

Carroll argues that the District Court abused its discretion in denying his presentence motion to withdraw his guilty plea because he has proof of a defense to the charges and because his guilty plea was coerced by a promise that he would be removed from solitary confinement, which was exacerbating his mental illness.

Carroll had been placed in solitary confinement while in pretrial detention in the Allegheny County Jail after he allegedly solicited other inmates to kill the victim, the aunt in whose custody she had been placed, and the Assistant U.S. Attorney prosecuting the case. In response to defense counsel's motion to determine Carroll's competency to stand trial, Carroll was examined by a court-appointed psychiatrist. The District Court held a hearing on the motion, during which it considered the psychiatrist's report and heard defense counsel argue that solitary confinement was exacerbating Carroll's mental

3

problems. Defense counsel noted the psychiatrist's conclusions that Carroll was able to understand the nature and consequences of the proceedings against him and to assist in his defense, but that he did have psychiatric problems, including a "borderline personality disorder" that would make it difficult for defense counsel to work with him. According to defense counsel, the report also stated that solitary confinement was not healthy for Carroll and that it might induce psychosis.

The District Court found that Carroll was competent to stand trial. On March 31, 2004, Carroll informed the court that he intended to plead guilty. At a change of plea hearing, Carroll stated that he was housed in the mental health unit of the prison in order to receive proper treatment for his disorders. He stated that the treatment he was receiving and the prescription medications he was taking had not affected his ability to understand the proceedings. After determining that he was competent to enter a plea, the District Court asked Carroll if he was guilty of the charge, to which he responded "[y]es, sir." App. at 3–4.

However, in September 2004 Carroll moved to withdraw his guilty plea. The District Court held a two-day evidentiary hearing and denied the motion on November 3, 2004, finding that Carroll "ha[d] not meaningfully reasserted his innocence." App. at 6. The Court noted Carroll's admission of guilt at his plea hearing, as well as an admission of guilt in a letter written to the Court dated April 2, 2004, in which he stated: "'*I plead Guilty to and I am guilty to [sic] Sexual exploitation of a minor.*'" App. at 7. In addition,

4

Goebert had agreed to cooperate with the Government and testify regarding Carroll's attempt to sell him photographs of the victim. Carroll's only defense to this charge was a bald–and late–assertion of innocence.

Carroll claimed that he should be allowed to withdraw his guilty plea because he had been in solitary confinement at the time of his plea, in great fear of the possibility of life imprisonment. He also claimed that he pled guilty because defense counsel had failed to challenge his solitary confinement, resulting in mental deterioration that led him to enter a guilty plea. The District Court rejected both of these arguments, noting the efforts it had made to ensure Carroll's competency. The Court further ruled that defense counsel had not been ineffective because he had petitioned the Court and the prosecution to have Carroll removed from solitary confinement, a decision within the sole discretion of the Marshals. "Defendant's argument boils down to a fear of incarceration," insufficient grounds for withdrawal of a guilty plea. App. at 10. Because the District Court found that Carroll had not asserted his innocence nor presented sufficiently strong reasons for wanting to withdraw his guilty plea, it declined to address the third requirement for withdrawal of a plea – whether the Government would suffer prejudice as a result.

Prior to sentencing, Carroll submitted extensive objections to the Presentence Investigation Report ("PSR"), which had been supplemented by the Probation Office several times after its initial draft in May of 2004. The District Court rejected Carroll's argument that he was entitled to a downward departure under U.S.S.G. §§ 5K2.0(b),

5K2.13 because his history of mental illness constituted a mitigating circumstance, finding that "there is no evidence that defendant's mental impairment contributed to the commission of the offense." App. at 23.

Carroll was sentenced on January 15, 2005, just three days after the Supreme Court's decision in Booker, 543 U.S. 220. The District Court denied the Government's motion for a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice based on Carroll's attempts to secure the murders of the victim, her caretaker, and the prosecutor while in jail, and a two-level enhancement under § 2G2.1(b) because the victim was a minor in the defendant's supervisory control. The District Court stated that it understood Booker to disallow enhancements of Carroll's sentence on the basis of facts not admitted by him nor proven to a jury beyond a reasonable doubt. Accordingly, the District Court adopted the PSR, assigning Carroll a base offense level of twenty-seven under § 2G2.1(a), applying a four-level increase due to the victim's age under § 2G2.1(b)(1)(A) (which could be proved by facts established during the plea colloquy), and a three-level decrease for acceptance of responsibility under § 3E1.1(a). This resulted in an offense level of twenty-eight and a criminal history category of VI, corresponding to a Guidelines range of 140–175 months.

The Court imposed a 175-month sentence of imprisonment, at the top of the Guidelines range but well within the statutory maximum of twenty years. The Court also ordered three years of supervised release and required Carroll to cooperate in the

6

collection of a sample of his DNA as a condition of supervised release. The Court

explained its decision to sentence the defendant at the upper end of the Guidelines range

as follows:

> The defendant's conduct in the present case is deeply troubling and disturbing. The offense to which he has entered his guilty plea involved a minor child who, as a result of his actions, has been exposed to and experienced more than any child ever should.
>
> Accordingly, a sentence at the upper end of the guideline range is necessary in order to meet the sentencing objectives of punishment, deterrence and incapacitation.
>
> Based on the nature of the offense, a lengthy period of supervised release, which includes mental health treatment, specifically sex offender treatment, as a condition[ ] of release is appropriate.

App. at 436-37.

## II.

We review a district court's denial of a motion to withdraw a guilty plea before

sentencing for abuse of discretion. See United States v. Jones, 336 F.3d 245, 252 (3d Cir.

2003). A defendant may withdraw a guilty plea if he "can show a fair and just reason for

requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The burden to demonstrate a

fair and just reason is a substantial burden and falls on the defendant. Jones, 336 F.3d at

252. A defendant may not withdraw a guilty plea on a whim, or for fear of punishment.

See United States v. Hyde, 520 U.S. 670, 676–77 (1997) (a guilty plea is a grave and

solemn act that may not be withdrawn on a mere lark); Jones, 336 F.3d at 252. The

District Court must consider three factors when it decides a motion to withdraw a guilty

7

plea: 1) whether the defendant asserts his innocence; 2) the strength of the defendant's reasons for wanting to withdraw the plea; and 3) whether the government would be prejudiced by withdrawal. Jones, 336 F.3d at 252.

The District Court did not abuse its discretion in holding that Carroll had not met his burden to assert evidence of his innocence. As the District Court noted, the evidence Carroll alleged in support of his claim of innocence was relevant only to crimes for which he was not charged – namely, his sexual assaults on the victim rather than the photographs. Carroll admitted he had taken the photos in his plea colloquy, at sentencing, and in a letter to the Court before he filed his motion to withdraw.

The District Court also found that Carroll's reason for withdrawal of his guilty plea amounted to a fear of punishment. On appeal, Carroll focuses on the argument that he was coerced into entering a guilty plea by the Government's promises to have him removed from solitary confinement if he pled guilty. This argument is unavailing because the record demonstrates that Carroll was mentally competent when he entered his guilty plea and that the plea was intelligent and voluntary, and, therefore, valid. See Hill v. Lockhart, 474 U.S. 52, 56 (1985). Carroll has failed to demonstrate coercion or any other sufficient reason for withdrawing his guilty plea. Cf., e.g., United States v. Martinez, 785 F.2d 111, 113–15 (3d Cir. 1986) (defendant could not demonstrate that meeting during which prosecutors improperly attempted to solicit a guilty plea in the absence of his attorney had any effect on his decision to plead guilty, and, accordingly, the government's

8

improper behavior was not grounds to withdraw plea).

As the District Court observed, if the defendant fails the first two prongs of the test for withdrawal of a guilty plea, there is no need to consider the third, prejudice to the Government. See id. at 116. Because we find the District Court did not err in concluding Carroll did not meet his burden on the first two prongs, we conclude that the Court did not abuse its discretion in denying Carroll's motion to withdraw his guilty plea.

Carroll also challenges his sentence, contending that it is unreasonable in violation of Booker, 543 U.S. 220. United States v. Cooper, 437 F.3d 324 (3d Cir. 2006). Specifically, Carroll argues that 18 U.S.C. § 3553(a), which requires consideration of the defendant's history and circumstances, and his need for medical care, required the Court to take into account evidence of Carroll's mental health problems at sentencing. Carroll asserts that the District Court did not adequately take into account his mental illness, and that his sentence is therefore unreasonable.

The party challenging the sentence has the burden to demonstrate unreasonableness. See id. at 332. Carroll has not met that burden in this case. We are satisfied that the District Court "exercised its discretion by considering the relevant factors" of 18 U.S.C. § 3553(a), and that it applied them reasonably in arriving at a sentence. Id. at 329. The District Court adopted the PSR's basic Guidelines calculation, and heard a lengthy statement from Carroll and argument from counsel on both sides during the sentencing hearing. The District Court adequately took into account Carroll's

mental illness by recommending that he receive mental health treatment while in prison, and that he continue to receive treatment after his release.

The Court chose a sentence at the upper end of the range in light of the seriousness of Carroll's offense and the need for deterrence and incapacitation. See id. at 331 (noting that a sentence within the Guidelines range is more likely to be reasonable). We are satisfied that the District Court gave meaningful consideration to Carroll's mental illness and other important factors in this case. See id. at 329. The District Court observed the defendant at his plea colloquy, at his plea withdrawal hearing, and at sentencing, and we are confident that the Court was in "the best position to determine the appropriate sentence in light of the particular circumstances of the case." Id. at 330. Accordingly, a sentence at the top of the Guidelines range was not unreasonable or an erroneous application of 18 U.S.C. § 3553(a). Cf. id. at 332.

Finally, Carroll challenges as unconstitutional the requirement that he submit a DNA sample as a condition of supervised release. As Carroll acknowledges, we have already considered this issue in detail in United States v. Sczubelek, 402 F.3d 175, 187 (3d Cir. 2005), in which we upheld collection of DNA samples from criminal offenders as a reasonable search. Accordingly, we reject Carroll's argument that his Fourth Amendment rights were violated by the requirement that he submit a DNA sample as a condition of supervised release.

III.

For the foregoing reasons, we will affirm both the order of the District Court denying Carroll's motion to withdraw his guilty plea and the judgment of the District Court imposing a sentence of 175 months imprisonment.