**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1153
_____

UNITED STATES OF AMERICA

v.

JAMES OLIVER JOHNSON,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 10-cr-00063-001)
District Judge: Honorable Edwin M. Kosik
_____

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2012
_____

Before: RENDELL, GARTH and BARRY, <u>Circuit Judges</u>

(Opinion Filed: July 13, 2012)
_____

OPINION
_____

BARRY, <u>Circuit Judge</u>

James Johnson pled guilty to one count of conspiracy to manufacture, distribute,

and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846.

Prior to sentencing, Johnson filed a motion to withdraw his guilty plea. The District

Court denied the motion, and imposed sentence. Johnson now appeals. We will affirm.

## I. Background

### A. Underlying Conduct

On January 29, 2010, law enforcement agents received information from a confidential source that Johnson and Jonathan Miller ("Miller") were planning to manufacture methamphetamine. Acting on this information, Pennsylvania State Police Trooper Michael Adams ("Adams") began surveilling Johnson's home. Shortly thereafter, Adams observed a vehicle driven by Miller arrive at the home. Johnson exited his residence and got in the car, and the two men drove away. Adams remained at Johnson's residence, and approximately an hour and a half later, the men returned. As Johnson exited the car, Adams approached the men and identified himself as a Pennsylvania State Trooper. As he neared the vehicle, Adams noticed a strong chemical odor of ether and anhydrous ammonia, both key ingredients in the manufacture of methamphetamine, emanating from the car. Suddenly, Miller, who was still sitting in the driver's seat, started the car's engine and sped away from Johnson's residence. At the same time, Johnson fled down the street on foot. Adams pursued Johnson and, after a brief chase, placed him under arrest. Miller was apprehended a few blocks away by back-up officers.

A search of Johnson's pockets revealed both packaged and unpackaged methamphetamine, including some still wrapped in coffee filters commonly used in the

methamphetamine manufacturing process, and a small digital scale. Other items associated with methamphetamine manufacturing were seized from Miller's car.

## B. Indictment and Guilty Plea

On March 9, 2010, a grand jury sitting in the Middle District of Pennsylvania returned a two count indictment against Johnson and Miller charging them with the manufacture and distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One), and conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846 (Count Two). The following week, Johnson was arraigned and entered an initial plea of not guilty. On May 10, 2011, the grand jury returned a superseding indictment amending Count One to allege the manufacture and distribution of more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). In light of the amount of drugs involved and a prior felony drug conviction, Johnson faced a ten-year mandatory minimum sentence—and a statutory maximum of thirty years—if found guilty of this charge.

Johnson was scheduled to be arraigned on the superseding indictment on May 25, 2011. On the morning of the hearing, however, he entered into a binding plea agreement with the government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), under which he agreed to plead guilty to the conspiracy count of the superseding indictment (Count Two) in exchange for a nine-year prison sentence. Before accepting the plea, the District Court engaged in a thorough colloquy with Johnson to ensure that he understood

the consequences of his decision to plead guilty. (J.A. II at 20-34.)

At the outset of the colloquy, the District Court questioned Johnson and his attorney about Johnson's prescription medications:

> THE COURT: Are you taking any kind of medication that could affect your ability to understand what we're doing here?
>
> THE DEFENDANT: No.
>
> THE COURT: What are you taking?
>
> THE DEFENDANT: I take Thorazine and a medication called Remeron.
>
> THE COURT: And it doesn't appear to me that if you've taken that medication, it's hindering you, in any way. Would you agree, Mr. O'Brien? You have some experience in these matters.
>
> MR. O'BRIEN: Yes, Your Honor, I agree that he's capable of participation in these proceedings.
>
> THE COURT: All right.

(*Id.* at 23.) The Court then informed Johnson of his right to a jury trial and explained that he would be waiving that right by pleading guilty. The Court further confirmed that Johnson had authorized his attorney to negotiate the plea agreement on his behalf and that he had "been a party to the negotiations" himself. (*Id.* at 24.) With respect to punishment, the Court noted that it was not bound by the parties' agreement to a sentence of nine years, but that Johnson would have the right to withdraw from the plea agreement if he received a longer sentence. The government gave a detailed recitation of the facts underlying Johnson's offense, at the conclusion of which the Court again addressed

4

Johnson:

> THE COURT: Okay, you've heard counsel for the Government. Is what he tells us about you, your conduct and what they found on you correct?
>
> THE DEFENDANT: I'm not denying what they found on me.
>
> THE COURT: And that it was a drug?
>
> THE DEFENDANT: Yes, it was drugs.

(*Id.* at 29-30.)

The District Court then explained at length that the conspiracy charge to which Johnson was pleading guilty involved not just the possession of drugs, but also an agreement to possess drugs with the intent to deliver. Thus, the Court emphasized that aside from demonstrating the presence of drugs in Johnson's possession, "the Government, in addition, would have to show that you knowingly and intentionally participated in that agreement to commit the offense." (*Id.* at 31.) Johnson stated that he understood this aspect of the charge, entered a plea of guilty, and then confirmed that he was "satisfied with . . . [his] plea of guilty to this offense." (*Id.* at 32.) The Court accepted the guilty plea, stating: "[T]his Defendant has an experienced lawyer, and after consulting with his lawyer, I believe, he has voluntarily and intelligently entered into this plea, and I'll adjudge him guilty of Count 2 of the indictment." (*Id.* at 32-33.)

### C.  Motion to Withdraw Guilty Plea

Following Johnson's guilty plea, the case was set for sentencing. On July 11, 2011, however, Johnson filed a motion to withdraw his plea. At a hearing on that motion,

5

Johnson argued that he had been under the influence of medication at the time of his plea and had not been given enough time to think about the agreement before accepting it. Moreover, he asserted that he had merely possessed the methamphetamine and therefore was innocent of the conspiracy charge. The District Court denied his motion, informing him that "if there was the slightest question or hesitation about whether you understood [your rights], we would never have taken the plea from you." (*Id.* at 49.) The Court further explained that it had reviewed the transcript of the plea colloquy and that "everything that was said here that day . . . confirm[s] that it was a voluntary and intelligent plea." (*Id.* at 50.) On January 10, 2012, Johnson was sentenced to nine years' imprisonment, as contemplated in his plea agreement. He timely appealed.

### III. Discussion

Johnson's only argument on appeal is that the District Court abused its discretion in refusing to allow him to withdraw his guilty plea.[1] Federal Rule of Criminal Procedure 11 provides that a defendant may withdraw a plea of guilty "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). In determining

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review a district court's order denying a motion to withdraw a guilty plea for abuse of discretion. *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011).

whether a defendant has satisfied his burden, a district court must consider three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (citation and internal quotations omitted).

Under this three-part test, it is clear that the District Court did not abuse its discretion in refusing to allow a withdrawal of the guilty plea. As to the first factor, Johnson offers only a one-sentence assertion, without any elaboration, that he has "consistently maintained his innocence in this case." (Appellant's Br. at 8.) We have repeatedly stated, however, that "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252. Rather, "[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818 (citation and internal quotations omitted). Johnson, however, points to nothing in the record to support a defense to the charges or cast doubt on the overwhelming proof of guilt proffered by the government.[2] Accordingly, he did not

---

[2] Nor does Johnson provide "sufficient reasons to explain why contradictory positions were taken before the district court" regarding his guilt. *Jones*, 336 F.3d at 253 (citation and quotation marks omitted). In his reply brief, Johnson asserts that at the time of his guilty plea, he "did not understand that he was admitting participation in a conspiracy to

sufficiently show that he is innocent.

Under the second prong of our analysis, we evaluate the strength of Johnson's reasons for seeking to withdraw his guilty plea. Johnson asserts that he was unable to fully appreciate the consequences of his guilty plea because: (1) he was under the influence of prescription medication at the time of his plea; (2) he was not given sufficient time to consider the agreement before accepting it; and (3) his understanding of the plea proceedings was impaired by his psychiatric problems and cognitive deficits. The clear weight of the record evidence, however, undermines each of these contentions. First, at Johnson's plea hearing, he informed the District Court of his prescribed medication and stated without apparent hesitation that it did not affect his ability to understand the court proceedings. Moreover, out of an abundance of caution, the District Court also conferred with Johnson's defense counsel, who "agree[d] that he's capable of participation in these proceedings." (J.A. II at 23.) Second, at no time during his plea hearing did Johnson indicate that he needed more time to consider the terms of the plea agreement. Indeed, the record discloses not a single instance in which Johnson hesitated,

---

manufacture, distribute and possess with intent to distribute methamphetamine, but rather thought he was admitting guilt to mere possession." (Reply at 3.) For support, he points out that in response to the government's proffer of evidence, he stated only that he was "not denying what they found on me." (J.A. II at 30.) When the record is viewed as a whole, however, it becomes abundantly clear that Johnson knew exactly what he was pleading to. As mentioned, the District Court clearly explained that the conspiracy charge involved not just the possession of drugs, but also an *agreement* to possess drugs with the intent to deliver. Johnson repeatedly stated that he understood this aspect of the offense prior to entering his guilty plea. (*Id.* at 30-32.)

equivocated, or expressed any doubt about his desire to plead guilty. And, third, although Johnson scored well below average in some areas of an IQ test and has been diagnosed with major depressive disorder, a psychiatric examination concluded that he "possesses a rational and factual understanding of the proceedings against him, has the capacity to assist legal counsel in his defense, and can adequately make decisions regarding his legal strategy." (J.A. III at 32.) Accordingly, there is no basis for concluding that Johnson lacked an understanding of the consequences of his plea.

Under the third prong of our test, we consider potential prejudice to the government in the event that the plea were withdrawn. We have made clear, however, that "the Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea." *Jones*, 336 F.3d at 255. Here, there can be no doubt that Johnson has failed to meaningfully assert his innocence or provide a convincing reason for withdrawing his plea. Accordingly, we need not consider the question of prejudice to the government, as it is abundantly clear from the other factors that the District Court did not abuse its discretion in denying Johnson's motion to withdraw his guilty plea.

## IV. Conclusion

For the foregoing reasons, the judgment of conviction will be affirmed.

9